NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

JOHN REIS, PETITIONER, v. BREEZE CORPORATIONS,
INC., RESPONDENT.

Decided August 9, 1940.

For the petitioner, *Elias G. Willman.*

For the respondent, *George E. Meredith* (by *Walter W. Hubley*).

\*     \*     \*     \*     \*     \*     \*

At the commencement of the trial of this case it was stipulated by and between the parties that the matter should be submitted to this court for a determination of the question of whether the petitioner suffered a compensable accident, it being further agreed between the parties that the question of disability should be withheld until such time as this court had found and determined whether or not the respondent was liable for the accident of the petitioner.

The petitioner \* \* \* testified that he was employed by the respondent and had worked for this corporation for about two years prior to the date of the accident; that he was employed in the department of the concern where shelves were painted; that these shelves were being manufactured by the respondent for the Federal Government, to be used in one of the libraries in Washington, District of Columbia;

that it was his job to dip these shelves into tanks of paint, and then place the shelves on racks, pushing same into an oven where the paint was dried or baked; that after the baking process was completed the shelves were removed and turned over to another department for further processing. The petitioner further testified that on October 6th, 1939, at about seven-thirty in the morning, he had gone out from the place where he was working, through a doorway, onto a balcony which was on the outside of the building, said balcony being approximately fifteen to twenty feet from the ground level; that he had gone out on this balcony to get fresh air; that he was standing on the balcony about five or six inches from the railing around the balcony when he lost his balance and fell backward, at the same time grabbing hold of a co-worker who was standing in front of him and causing said co-worker to be carried to the ground below with the petitioner. Petitioner further testified that the railing near to which he had been standing fell with him at the time of the fall; that at the time of this accident the petitioner had almost completed his shift, his work for that period ending at eight A. M.

Petitioner was cross-examined at length, during the course of which he was questioned as to whether or not he had been given orders not to go out on the balcony, and the petitioner denied such instructions. He was also cross-examined as to the description of the balcony and the use of same by the employer, as well as the construction and nature of the railing. During the course of cross-examination the petitioner was presented with several photographs of the site of the accident, which were marked for identification. The petitioner was called upon by the attorney for the respondent, during cross-examination, to demonstrate to the court exactly the manner in which the accident had occurred.

The petitioner called as a witness one Benny Pruchnicki, co-worker with the petitioner, and the other party that was injured in the accident in this case. This witness testified as to the duties performed by the petitioner and himself, and described the accident in question. On cross-examination this witness was questioned relative to orders being given against

the use of the balcony by the workmen, but the issuance of said orders was denied by this witness. This witness also admitted, on cross-examination, that he had instituted a suit now pending, against his employer as a result of the accident in the present case.

Various other witnesses were produced by the petitioner, either on the petitioner's direct case, or in rebuttal, their testimony being, in the main, relative to the question of whether or not orders had been issued against the use of the balcony by the workmen of the respondent.

The respondent called as its witnesses Henry Curran, foreman of the petitioner; Henry Kruesheld, superintendent of the respondent corporation; John Holland, assistant superintendent; Falstaff Johnston, vice-president; Joseph Urbanski, maintenance man of the respondent corporation; various other assistant foremen or co-workers of the petitioner; and one witness to the accident itself, employed by Waverly Terminal. These witnesses testified to the duties of the petitioner; the nature of the work performed by the respondent company; description of the premises of the respondent; their knowledge of the accident. Included in this testimony were specific statements by the witnesses that definite orders had been given all of the workmen in the department in which the petitioner was employed that they were forbidden to go out onto the balcony in question; that on at least several occasions locks had been placed on the door between the premises of the respondent and the balcony, the keys to said locks being retained by persons in authority, and which locks had on various occasions been forcibly pried from their location; that the balcony in question was not part of the leased premises of the respondent; that none of their operations were carried on on said balcony; that none of the duties of the petitioner had any connection with the use of the balcony. The respondent also offered into evidence various photographs of the scene of the accident.

This court has given careful and lengthy consideration to the matter as presented. All stipulations, all of the testimony, and any and all exhibits have been carefully considered by this court, and in addition to the foregoing, this court

personally inspected the site of the accident in this case, as an aid to arriving at a fair and proper determination.

The matter as presented to this court by the petitioner claims an accident arising out of and in the course of his employment; the defense interposed by the respondent denies that the petitioner met with an accident arising out of and in the course of his employment, in that the petitioner, at the time of the accident, was not on the premises of the respondent, and that the accident occurred as a result of disobedience of orders, in that at the time of the accident the petitioner was at a place where he had been ordered not to be.

It is elementary in this state that in order that the petitioner may recover from the respondent, he must prove an accident arising out of and in the course of his employment. Both of these elements must be present. Among the many New Jersey cases which have established this rule are those of *Furman* v. *Rockling Co.,* 3 *N. J. Mis. R.* 806; *Bryant* v. *Fissel,* 84 *N. J. L.* 72; *Belyus* v. *Wilkinson-Gaddis & Co.,* 178 *Atl. Rep.* 181; *Hall* v. *Doremus,* 178 *Id.* 781, 175 *Id.* 369.

The petitioner alleges that his accident occurred during the course of his employment, and that same arose out of his employment. This allegation the respondent denies, claiming that the petitioner, as hereinbefore stated, was disobeying orders given by his employer when he placed himself at that point where the accident occurred.

It is an old and well-founded principle of law that an employer may regulate, by rules and orders, his employes, and is at liberty to define the sphere of duty of his workmen. *Lash* v. *Ivins & Co.,* 19 *T. L. R.* 142; 5 *W. C. C.* 17.

The question of when disobedience of orders will prevent a petitioner from recovering from his employer has been gone into by the higher courts of this state, as well as the Compensation Bureau, on many occasions. This court feels that the principles relative to this situation are well established. It clearly appears that where the employer has seen fit to limit the sphere of the employment, then the violation of orders limiting such sphere defeats the right to compensation; where the instructions relate to how the work should

be done or as to the instrumentalities to be used in the prosecution of the work, a violation of such orders is not a bar to compensation. We find the rule, as stated above, set out in the case of *Smith* v. *Corson*, 87 *N. J. L.* 118; in which case the workman was ordered not to go onto certain scaffolding, but to work on the ground. He fell as a result of climbing on the scaffolding and was killed, and it was held that the accident did not arise out of and in the course of his employment, inasmuch as he had disobeyed orders relating to the sphere of his employment. Others, of the many cases on this point, include the case of *Reimers* v. *Proctor Publishing Co.*, 85 *N. J. L.* 451; *Cassele* v. *Mueller Macaroni Co.*, 99 *Id.* 270; *Schelf* v. *Kishpough*, 37 *Id.* 173. In arriving at the rules contained in the above cases this state followed a long line of English cases relative to this issue: *Dougel* v. *Westbrook*, *Gordon's W. C. Rep.* 522; *Pope* v. *Hills' Plymouth Co., Id.* 15; *Barnes* v. *Nunnery Colliery Co., Id.* 90; *Whitehead* v. *Reader*, 2 *K. B.* 48; 3 *W. C. C.* 40; *Lowe* v. *Pierson*, 1 *Q. B.* 261; *Mulholland* v. *Hazellon*, 75 *Ir.; L. T. R.* 217.

In the case now before this court, as in any case, it is incumbent on the court to weigh the probabilities and to sift the testimony to find where the truth lies, and from same to arrive at a proper decision. It goes without saying that the credibility of the witnesses is of major importance. As trier of the facts, the court, in addition to hearing the testimony of the witnesses, must consider the attitude and demeanor of the witnesses, the probability and plausibility of their stories, and to weigh their testimony against any possible interest or bias.

\*        \*        \*        \*        \*        \*        \*

In the first place, I am not at all satisfied as to the credibility of the petitioner and several of his witnesses. Weighing their testimony and their demeanor against other testimony found in this case, as well as certain physical factors, as described by witnesses, or as observed by this court on inspection of the site of the accident, leads me to the foregoing conclusion. There are too many unexplained discrepancies between the petitioner's case and the respondent's case to satisfy this court that the allegations of the petitioner are founded on fact.

There is no contradiction to the testimony presented by the respondent that the point at which the accident occurred was not part of the premises occupied by the respondent. The respondent in this case leased a certain portion of the Waverly Terminal Building, at one time known as the Durant Motor Company. From the testimony adduced by the respondent, it clearly appears that the balcony in question was not leased to the respondent and was not part of the premises utilized by them in their business. There was some testimony adduced by the petitioner that this balcony had been used for drying operations by the respondent. This has been denied by witnesses produced by the respondent, and after inspection of the premises by this court, I am satisfied that the accident did not occur on premises controlled or used by the respondent.

The respondent produced several witnesses, including the maintenance man, who testified that in addition to issuing orders against the use of the balcony by workmen, locks had been placed on the door between the premises occupied by the respondent and the balcony on at least several occasions, which locks had been forcibly removed by undisclosed persons. While all of the witnesses produced in the petitioner's case denied that they had any part in the removal of said locks, they did not, nevertheless, satisfy this court that locks had never been used, and that they were used for any other purpose than to prevent access to the balcony by other than the maintenance manager.

The petitioner's description of the accident in question did not appear feasible. He testified, and described same, and from same, as well as a careful examination of the exhibits and a personal inspection of the balcony and railing in question, this court cannot conceive how the accident could have occurred as alleged by the petitioner.

As I have mentioned above, witnesses on behalf of the petitioner testified that the balcony had been used for drying purposes by the respondent. This was denied by the respondent's witnesses. This court's inspection of the balcony, if nothing else, satisfied the court that the balcony is in no position or condition to be used by the respondent for the

purpose alleged by the petitioner. The entrance to the balcony is through a small door, which I understand has been placed thereon subsequent to the accident. The balcony itself is located on that part of the building overlooking a large driveway and entrance to the building itself as well as an adjacent building approximately seventy-five feet away. The condition in this driveway over which the balcony is located is not, in my opinion, located in such a position as to be an ideal place for cooling off. On the occasion of my visit, it was very warm and there were odors of gasoline and oil from the various trucks that use the driveway. In so far as the use of the balcony for drying any painted articles, the racks themselves are over six feet high and conveyed by means of rails and cannot be moved to the balcony. The balcony itself is covered with lint from the adjacent laundry and that in itself would be detrimental to using the balcony for the purpose of drying any freshly painted articles.

This court is satisfied from the testimony adduced in this case and all of the other elements that have gone into the making up of the trial of this case that the petitioner, and his fellow workmen, had been forbidden to use the balcony by the respondent, and that its use, at the time of the accident, was in violation of orders which limited the sphere of the petitioner's employment. That the respondent issued such orders is, as hereinbefore mentioned, fully understandable and credible to this court. Locks were placed on the doorway at intervals in order to aid the enforcement of said orders; the balcony was not part of the premises occupied by the respondent; the balcony was in no condition to be used by the respondent in the operations carried on by the petitioner and his co-workers; there was nothing on the balcony to aid the petitioner in performing his duties, and, as a matter of fact, the petitioner testified that at the time of the alleged accident he was on the balcony for no purpose incidental to his work.

By the more credible testimony and the more probable and believable statements, as well as from the court's inspection of the premises, and application of the established law relative to such a situation, I am satisfied that the petitioner's

accident did not arise out of and in the course of his employment, and that he suffered his unfortunate accident as the result of being where he had been ordered not to be by his employer.   The petition must be dismissed.

\*          \*          \*          \*          \*          \*          \*

JOHN C. WEGNER,
*Deputy Commissioner.*