540 A.2d 549

COMMONWEALTH of Pennsylvania

v.

Debby OGIN, Appellant.

COMMONWEALTH of Pennsylvania

v.

Glynn WILDONER, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 9, 1987.

Filed April 11, 1988.

Albert J. Flora, Jr., Wilkes–Barre, for appellants.

118

Joseph C. Giebus, Assistant District Attorney, Wilkes–Barre, for Com., appellee.

Before CIRILLO, P.J., and CAVANAUGH, BROSKY, ROWLEY, WIEAND, McEWEN, BECK, TAMILIA and POPOVICH, JJ.

BECK, Judge:

This is a consolidated appeal by a mother and father who were convicted by a jury and sentenced for using excessive force against their baby daughter. The issue is whether the evidence adduced at trial supports the jury verdict that appellants are guilty of simple assault[1] and endangering the welfare of children.[2] We find that the evidence is sufficient to establish appellants guilt, and we affirm.

Appellants' convictions were based on three separate incidents involving their daughter April. Viewed in the light most favorable to the Commonwealth as verdict winner, the facts are as follows.

One day during the summer of 1983, Commonwealth witness Ann Marie Blaine observed appellants' children April and Glynn Jr. playing outside the building where the family lived. At this time, Glynn Jr. was three years old and April was approximately seventeen months old. Glynn Jr. rode his Big Wheel down to the end of the block and April followed him. Appellant Debby Ogin ran after the children, told them to stay in front of the building, and slapped April on the rear end. Soon afterward, Glynn Jr. rode down an alley and April again followed him. Debby ran after the children and grabbed April. Blaine testified on direct examination:

A. Debby was dragging April.

Q. You say dragging. Can you describe for the jury what you mean by that?

A. She had her by the one arm and was dragging her. Her feet were touching the ground. She was stumbling

1. 18 Pa.Cons.Stat.Ann. § 2701 (Purdon 1983).
2. 18 Pa.Cons.Stat.Ann. § 4303 (Purdon 1983).

to try to walk. And she flung her like an old rag doll against the building. She said, I told you to sit there.

Q. When you say she flung her against the building, please, describe to the jury exactly what Debby Ogin did to her daughter.

A. She had her by the arm. She come around the building with the child by the arm and she threw her up against the building by one arm.

Q. What part of April's body hit that building?

A. The whole back of her. And she—when she hit the building, she kind of stumbled over and hit the steps. And they're cement steps there.

. . . .

Q. What happened after April had been thrown against the wall?

A. The child was screaming for quite a few minutes, and then Debby took her and put her inside the stairway and shut the door.

R. at 25–27. The witness also stated that she observed a small red mark that resembled a brushburn on the side of April's face.

The second incident occurred the following winter. On December 20, 1983, Debby Ogin took her children to see a Santa Claus at the local firehouse. They were accompanied by Audrey Wampole, a neighbor, and by Ann Marie Blaine. Wampole held April for the first hour they waited and then set her down. April approached her mother and gestured that she wanted to be picked up. Debby Ogin responded by slapping April with the back of her hand causing April to stumble. Ten minutes later, April approached her mother and reached out her arms to be picked up. Debby Ogin again hit April in the face with the back of her hand, this time with "extreme force". R. 34. April fell and hit her back against a brick wall. Afterward, Blaine noticed a lump on the back of the child's head.

The third incident took place in February, 1984, and involved Glynn Wildoner, April's father. Doris Whitmire, Mr. Wildoner's cousin, testified that she was with his family

one evening at dinner time. She saw Debby Ogin take spaghetti off the stove and place it on a plate on the kitchen table. Glynn Wildoner moved the plate in front of April. When April did not eat it, Wildoner reached out, put his hand under the plate, and pushed the hot food up into the child's face. April began crying. Her face swelled and she sustained small burn marks which dissipated after a few days.

Appellants were tried by a jury empaneled by the Court of Common Pleas of Luzerne County. Ogin was convicted of two counts of simple assault and two counts of endangering the welfare of children, and was sentenced to two years probation.[3] Wildoner was convicted of one count of simple assault and one count of endangering the welfare of children and was sentenced to two years special probation consecutive to a sentence he was then serving for unrelated criminal conduct. This appeal followed.

Appellants allege that the jury verdict was based on insufficient evidence and was against the weight of the evidence in three respects. They contend that the evidence does not establish that they performed acts prohibited by the simple assault statute. They contend that the evidence does not establish that they knowingly violated the endangering the welfare of children statute. And they contend that the evidence does not establish that the force directed at April was anything other than a justifiable form of corporal punishment.

As we noted in *Commonwealth v. Taylor:*

... In reviewing the sufficiency of the evidence, we must view the evidence presented and all reasonable inferences taken therefrom in the light most favorable to the Commonwealth, as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. The credibility of witnesses and the weight to be accorded the evidence produced are

3. Appellant Ogin was acquitted of charges stemming from two other alleged incidents of child abuse.

matters within the province of the trier of fact; the fact finder is free to believe all, some, or none of the evidence.

A motion for new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence. Whether a new trial should be granted on grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial judge, and his decision will not be reversed on appeal unless there has been an abuse of discretion. The test is not whether the court would have decided the case in the same way but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail. 324 Pa.Super. 420, 424–25, 471 A.2d 1228, 1229–30 (1984) (citations omitted). *See also Commonwealth v. Pearsall,* 368 Pa.Super. 327, 329–330, 534 A.2d 106, 108 (1987).

With this standard in mind, we review appellants' claims.

## I.

We begin by considering appellants' challenge to their convictions for simple assault. Section 2701 of the Crimes Code provides that a person is guilty of assault if he "attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to another...." Section 2301 of the Crimes Code defines bodily injury as "[i]mpairment of physical condition or substantial pain." Appellants argue that April's injuries were not sufficiently serious to support an inference that appellants either impaired her physical condition or caused her substantial pain. We disagree.

■ The existence of substantial pain may be inferred from the circumstances surrounding the use of physical force even in the absence of a significant injury. *See Commonwealth v. Jorgenson,* 341 Pa.Super. 550, 492 A.2d 2 (1985), *rev'd on other grounds,* 512 Pa. 601, 517 A.2d 1287 (1986). In *Jorgenson,* this court found that the act of twice striking the victim across the face was sufficient to

support a conviction for simple assault. *See also Commonwealth v. Bryant,* 282 Pa.Super. 600, 608, 423 A.2d 407, 411 (simple assault occurred when assailant threw victim to the ground).

In the case sub judice, the jury was free to believe all of the testimony of Commonwealth witnesses Blaine and Whitmire. This testimony was internally consistent and there is no special reason to believe that it was particularly unreliable. In light of this testimony, one can infer that April suffered substantial pain from the fact: 1) that she was grabbed by the arm and flung against a building and then screamed for several minutes; 2) that she was struck in the face with extreme force causing her to fall against a wall; and 3) that she cried after having hot food shoved in her face. These incidents are serious matters; we are not dealing here with "temporary hurts resulting from trivial contacts which are a customary part of modern day living." *Commonwealth v. Kirkwood,* 360 Pa.Super. 270, 275, 520 A.2d 451, 454 (1987). Accordingly, appellants' argument that the Commonwealth failed to establish the elements of simple assault is without merit. *Compare In re J.L.,* 327 Pa. Super. 175, 475 A.2d 156 (1984) (finding insufficient evidence of simple assault where sixteen year-old defendant pushed two-year-old nephew with elbow and nephew neither cried nor sustained any injury).

## II.

Appellants also allege that they were improperly convicted of endangering the welfare of children. Section 4304 of the Crimes Code provides:

A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits a misdemeanor of the second degree if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

Appellants contend that they did not fail to provide a duty of protection. We conclude that this argument is without merit. Section 4304 is a comprehensive provision designed

to penalize those who knowingly breach a legal duty to protect the well-being of children who are entrusted to their care. *See Commonwealth v. Cardwell,* 357 Pa.Super. 38, 515 A.2d 311 (1986); *Commonwealth v. Taylor.* As we noted in *Taylor:*

The [Pennsylvania] Supreme Court has said that Section 4304 was drawn broadly to cover a wide range of conduct in order to safeguard the welfare and security of children. It is to be given meaning by reference to the common sense of the community and the broad protective purpose for which it was enacted. *Commonwealth v. Mack,* 467 Pa. 613, 618, 359 A.2d 770, 772 (1976).

324 Pa.Super. at 426–27, 471 A.2d at 1231.

■■■■ Parents have a responsibility to advance the physical, mental, and emotional health of their children, and extreme acts or grave omissions which adversely affect a child may come within the scope of the statute. *See Cardwell.* This will sometimes include actions which the parent allegedly undertook in order to punish the child for bad behavior. *See Commonwealth v. Moore,* 261 Pa.Super. 92, 395 A.2d 1328 (1978). In the instant case, we cannot say that the jury erred by finding that appellants breached a statutory duty to protect their daughter April. April was a very young child when the appellants flung her, struck her, and burned her in the manner graphically described by the Commonwealth witnesses. One may conclude that these incidents were traumatic and created a danger of lasting physical harm notwithstanding the fact that April fortuitously did not sustain serious injury. In short, a jury could find that appellants' acts were so contrary to "the common sense of the community" as to rise to the level of criminal liability.[4]

4. We note that the trial judge made the following observation at sentencing concerning appellant Wildoner's treatment of his daughter.

THE COURT: It is not a good thing that happened, needless to say. It should never have been done with a two year old child. The child could have been, in theory, harmed as far as her sight is concerned, or burned in some way by this hot plate of spaghetti being thrust into her face. It was a terrible act. Apparently it was

Appellants also contend that by failing to provide a duty of protection, they did not *knowingly* endanger April's welfare as required by section 4304. The jury reasonably could have found otherwise based upon an assessment of the Commonwealth's evidence and of appellants' own testimony at trial. Although defense counsel presented evidence that appellants were of low intelligence and had repeatedly experienced difficulties with raising their children, both Ogin and Wildoner took the stand and insisted that they were capable of fulfilling their parental responsibilities. Appellants denied that they had ever mistreated April in the ways described by the Commonwealth witnesses. They testified that they believed it was wrong to beat children, and that they never disciplined their children except by hitting them on the rear end without great force or by taking away their toys. The jury could have credited the Commonwealth's version of the events, and could have believed so much of the defense testimony as indicated that appellants knew that the conduct in question posed a threat to a child's welfare. Thus, the elements of the crime of endangering the welfare of children were established.

## III.

■ Appellants' final argument is that even if their actions would otherwise have been criminal, they are entitled to the defense of justification based upon their status as the victim's parents. We agree with appellants that parents may not ordinarily be prosecuted for disciplining their children. We do not agree that under the facts of this case appellants' actions were justified.

It is well-established that parents have a privilege to subject their children to corporal punishment when the children misbehave. *See, e.g., Commonwealth v. Moore,*

because the child wouldn't sit. So, if the child doesn't sit, then it gets spaghetti thrown in its face. It makes no sense at all.
The overall purpose of all these laws is to protect young children who are completely helpless and defenseless. People must understand you cannot do this to someone who cannot even protect themselves.
Sentencing Hearing Record at 32.

261 Pa.Super. at 97, 395 A.2d at 1330; *N.B. v. Commonwealth, Dep't of Pub. Welfare,* 107 Pa.Commw. 26, 527 A.2d 623 (1987). This is so because our society recognizes the primary role of parents in preparing children to assume the obligations and responsibilities of adults, and because there is a need to ensure that the state through its criminal justice system does not unduly interfere with the private realm of family life. Nevertheless, there are limits regarding the type and severity of the corporal punishment which a parent may impose. The law long ago abandoned the view that children are essentially chattels of their parents without independent legal rights. *See Commonwealth v. Ludwig,* 366 Pa.Super. 361, 375, 531 A.2d 459, 466 (1987) (en banc) (Tamilia, J., concurring). Moreover, it is now clear that child abuse is a serious and widespread problem, *Commonwealth v. Allen,* 506 Pa. 500, 509, 486 A.2d 363, 367 (1984), *cert. denied,* 474 U.S. 842, 106 S.Ct. 128, 88 L.Ed.2d 105 (1985); the state has a powerful interest in preventing and deterring the battering of children.

In 1972, the legislature balanced these competing interests by adopting section 509 of the Crimes Code. This section provides in relevant part:

The use of force upon or toward the person of another is justifiable if:

(1) The actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor or a person acting at the request of such parent, guardian or other responsible person and:

(i) the force is used for the purpose of safeguarding or promoting the welfare of the minor, including the preventing or punishment of his misconduct; and

(ii) the force used is not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation.

18 Pa.Cons.Stat.Ann. § 509 (Purdon 1983). We conclude that appellants' conduct was not authorized by this provision.

Appellants contend that the Commonwealth's evidence showed that they were attempting to discipline April for her misconduct on each of the occasions when they used force. We will assume arguendo that section 509(1)(i) was satisfied. We must therefore consider whether or not the force which appellants employed was in excess of that permitted by section 509(1)(ii). Section 509(1)(i) and (ii) involve independent requirements and appellants are not entitled to a justification defense unless they complied with both standards. This point is underscored by the commentary to section 3.08 of the Model Penal Code. Model Penal Code section 3.08 is virtually identical to Pennsylvania Crimes Code Section 509 and it is the source from which Pennsylvania Crime Code Section 509 was derived. The commentary states:

> The law has universally allowed a privilege for the exercise of domestic authority, sometimes articulated in the penal statutes, though often without a definition of its scope. Older decisions tended to treat the motive of the actor as decisive, though extreme measures naturally could be taken to refute benevolent intent. Modern authority has tended towards a more objective test of moderation. The Model Code formulation requires a true parental purpose, while forbidding extreme force however well-intentioned is its use.

Model Penal Code and Commentaries § 3.08 commentary at 140 (Official Draft and Revised Comments 1985) (footnotes omitted).[5] It is thus clear that a defendant's actions are not

---

**5.** This approach is in accord with the majority rule in American jurisdictions.

Some courts have taken the view that the test of illegality is the infliction of permanent injury by means of the punishment administered, or that it proceeded from malice and was not in the exercise of a corrective authority, and they have accordingly held that a parent, or one in loco parentis, is not criminally liable merely because the punishment inflicted was excessive. The decided preponderance of authority, however, is that a parent, or one in loco parentis, in punishing children, must not exceed the bounds of moderation, and must not be cruel or merciless, and that any act of punishment in excess of such limits is unlawful, and this rule has been incorporated in some statutory provisions.

legally justified simply because he may sincerely believe that the best way of safeguarding or promoting a child's welfare is to inflict a cruel and patently excessive punishment.

■ After considering appellants' conduct in light of the standard established by section 509(1)(ii), we hold that the evidence is sufficient to support a finding that appellants exceeded their privilege to administer corporal punishment. We note that when applying the justification statute, the court should focus not only on the degree of force exerted by the parent but also on the age and the physical and mental condition of the child who has been disciplined. *See* Model Penal Code and Commentaries § 3.08 at 140 n. 2 (citing Restatement (Second) of Torts § 150 (1965)). April was two years old or younger when her mother flung her into a building, when her mother struck her with such force that she fell backward into a brick wall, and when her father pushed hot food in her face. Under these circumstances, a jury could have fairly concluded beyond a reasonable doubt that appellants used force which was known to create at least a "substantial risk of ... extreme pain or mental distress" within the meaning of section 509(1)(ii). Therefore, appellants' defense of justification was properly rejected.

Judgments of sentence affirmed.

CAVANAUGH, J., files concurring opinion.

CAVANAUGH, Judge, concurring:

Under the evidence in this case I am constrained to concur in the result reached by the majority. I am concerned however that this case be read as a precedent for facile resort to the criminal justice system as a vehicle for enforcement of a prosecutor's personal notions as to parental responsibility.

Annotation, *Criminal Liability for Excessive or Improper Punishment Inflicted on Child by Parent, Teacher, or One in Loco Parentis,* 89 A.L.R.2d 396, 400 (1963) (footnotes omitted).

If the conduct engaged in by appellants is not condoned by the professionals within our agencies that promote the welfare of children, the means by which that conduct is best altered is not through the imposition of criminal convictions. While the evidence in this case is strongly suggestive that appellants are not fully suited to their parental tasks, I believe that other forms of legal intervention are available to protect the interest of the juveniles involved before invocation of the criminal law and its unavoidably devastating effect on the hope or resolving appellants' problems in parenting.

Indeed, the appellants were the subjects of frequent intervention by both social workers with the child welfare agency and police personnel after numerous, and often anonymous, reports of child abuse were made regarding them. After a year of reports and visits to the appellants' household at all hours of the day and night by social workers, accompanied by the chief of police, the agency determined that the reports were unfounded. The pattern of calls to the child abuse hotline, followed by immediate visits which revealed no evidence of abuse, raises considerable suspicion regarding the intent with which the calls were made and the atmosphere in which the appellants were prosecuted.

The record reveals that all three of appellants' children were removed from the home upon their arrest on the instant charges. The children's wellbeing, if threatened by living with their parents, was protected through the system that is designed to safeguard their interests. Less than ideal circumstances, resulting from poverty and mental deficiency of their parents, may have caused the children of Debby Ogin and Glynn Wildoner to be among those considered to be less privileged by our society. However, branding her parents with criminal convictions will do no more to improve April's chances of happiness in childhood and of normal development as an adjusted and secure adult than would a conviction of April herself for being a part of the family unit.