**Commonwealth v. Laskey**

*Robert J. Kirwan II, assistant district attorney,* for the Commonwealth.

*Emmanuel H. Dimitriou,* for defendant.

STALLONE, *J.*, August 5, 1992—On March 23, 1992, the defendant, Donna L. Laskey, was arrested and charged with simple assault[1] and endangering the welfare of children.[2] These charges arose out of an incident occurring on February 12, 1992, at 233 Constitution Boulevard, Kutztown, Berks County, Pennsylvania, during which time the defendant struck her then 11-year-old daughter, Michelle Laskey, on her buttocks with a wooden paddle.

On April 20, 1992, a preliminary hearing was held before District Justice Gail Greth. Both charges were bound over for further court action. The matter is now before this court relative to a petition for writ of habeas corpus alleging that the Commonwealth failed to establish a prima facie case against the defendant at the preliminary hearing.

On July 8, 1992, we held a hearing on the defendant's petition and heard testimony from the two Commonwealth witnesses: (1) Michelle Laskey and (2) Dan Wagner, a caseworker for Berks County Children and Youth Services, who was originally assigned to investigate the complaint which led to the filing of the instant charges. The evidence as developed at the preliminary hearing and as supplemented at the most recent hearing by their testimony is as follows.

On February 12, 1992, the defendant received a telephone call from a Mrs. Wert, one of Michelle's teachers at Kutztown Elementary School, informing her that Michelle had been "disrespectful" that day towards her and called a fellow student a "slut." The defendant at-

---

1. 18 Pa.C.S. §2701 (1992).
2. 18 Pa.C.S. §4304 (1992).

tempted to talk to Michelle about this incident and also about her earlier discovery (approximately one to two weeks earlier) that Michelle had stolen earrings, necklaces and lipstick from the CVS Pharmacy and another store in Kutztown and had lied to her about where she got these items. The defendant was upset because she had previously forbidden Michelle from going to either store without an adult and had gone to see the managers of both stores about prior thefts committed by Michelle and yet Michelle had disobeyed her and in fact had stolen these additional items since that time. The defendant had already notified the Kutztown Police Department of her daughter's behavior and asked for their help with regard to the thefts, but had received none.

In discussing the matter with Michelle, she became verbally abusive and disrespectful towards her mother as well. In response, the defendant pulled Michelle's hair and slapped her on the arm and legs with her hand in an attempt to make "eye contact" with her. However, Michelle refused to obey her mother and continued to be verbally abusive and disrespectful. The defendant went to grab her by the arm but Michelle pushed it away. The defendant then said "I'll show you what it's like to be hit" and called for her husband[3] to "fetch" the wooden paddle from the kitchen. She then held Michelle across the back and smacked her ten times on the buttocks with the paddle. As a result, Michelle sustained bruises, as evidenced by two photographs taken by Dan Wagner on February 14, 1992, and soreness for a period of time.

---

3. This individual was referred to during the hearing as either Michelle's "stepfather" or the defendant's "paramour."

The evidence further establishes that, since this incident, the defendant has been having more of the same type of problems with Michelle, including her staying out all night without permission to do so.

At the conclusion of the hearing, this court directed both parties to file legal briefs in support of their respective positions addressing the issue of whether the defendant's acts constitute a criminal assault sufficient to allow a jury to find her guilty of the two offenses charged.

We begin our analysis of what is for this court, perhaps, a case of first impression by examining section 509 of the Crimes Code which prescribes the situations in which the use of force upon a child is "justifiable." According to section 509, the use of force is justified when:

"(1) The actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor or a person acting at the request of such parent, guardian or other responsible person; and

"(i) the force is used for the purpose of safeguarding or promoting the welfare of the minor, including the preventing or punishment of his misconduct; and

"(ii) the force used is not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation."

The Commonwealth and the defendant are in agreement: (1) that the defendant is Michelle's mother, (2) that the force used by the mother was for the purpose of punishing Michelle's continued misconduct and (3) that the force used by the mother was not designed to cause or known to create a substantial risk of death, serious bodily injury, disfigurement, mental distress or gross degradation but,

according to the Commonwealth, was intended to cause "extreme pain" in order to teach Michelle a lesson. Therefore, the Commonwealth claims her use of force was not "justifiable" under section 509 of the Crimes Code and that the evidence establishes a prima facie case against the mother on each of the two charges.

We do not agree. While the court frowns upon the use of corporal punishment upon any child, we must nevertheless recognize that, if a parent chooses to use corporal punishment, the court must distinguish between corporal punishment intended to discipline a child and corporal punishment which is "designed to cause ... extreme pain" and, therefore, constitutes a criminal assault under the Crimes Code. There is no doubt that the defendant intended to cause *some* pain to Michelle as a punishment for her misconduct. However, we are of the opinion that she did not intend to cause Michelle *extreme* pain for the evidence in the record does not support such a finding. The Commonwealth by its own admission relies totally, except for the pictures, upon circumstantial evidence for its position that the corporal punishment was inflicted by the mother with the intent to cause *extreme* pain. That evidence consists (1) of the defendant's voluntary statement to Dan Wagner that she spanked all of her children that day with the paddle because of their behavior, (2) that Michelle was struck ten times and (3) the fact that the defendant used a paddle and not her hand to strike Michelle on the buttocks. We do not believe, based upon section 509, that this circumstantial evidence is sufficient to permit this court to conclude or a jury later to speculate whether that force used by the defendant was designed to cause extreme pain.

Michelle herself acknowledged in response to the judge's question that it was not her mother's intent to cause her extreme pain.

*The court*: "Okay. When your mother spanked you with this paddle, do you think that she was doing it in an attempt to discipline you further?"

*The witness*: "Yes."

*The court*: "In other words, do you think that your mother tried as best as she could to ground you, to make you behave, and that didn't work and, as a result, she then resorted to the paddle?"

*The witness*: "Yes."

*The court*: "You don't really think that your mother intended to harm you, do you?"

*The witness: "No." N.T., Habeas Corpus Hearing, page 35.*

We are of the opinion that, by using the word "extreme" pain in section 509, the Pennsylvania Legislature clearly intended to permit parents to use corporal punishment in disciplining their children for misconduct without putting them in jeopardy of having criminal charges filed against them, provided that use of that force is not designed to cause *extreme* pain. In short, we believe that section 509 very clearly demonstrates that the defendant's conduct is not the type of conduct which the Legislature sought to proscribe by the filing of criminal charges such as those in the instant case.

We are further guided by the decision of the Superior Court of Pennsylvania in *Commonwealth v. Ogin,* 373 Pa. Super. 116, 540 A.2d 549 (1988). In that case, ap-

pellants were charged with and convicted by a jury of identical charges, simple assault and endangering the welfare of children, arising out of a series of incidents involving the use of excessive force against their 17-month-old baby daughter. On these occasions, the baby was flung against a building, struck in the face with the back of a hand with "extreme force," causing a lump, and had hot food shoved into her face, causing small burn marks. On appeal, appellants contended, inter alia, that these acts fell within the confines of section (1) of section 509 set forth herein and that they were therefore entitled to the defense of justification based upon their status as parents of this child. The Superior Court disagreed.

As the Superior Court noted, section 509 was adopted as a means of balancing the right of parents to administer corporal punishment for misbehavior with the state's interest in preventing child abuse. *Id.* at 554. As such, the court made clear that a parent's conduct in using corporal punishment to discipline a child must always be evaluated in light of section 509. In making that evaluation, the court held that the trial judge must always be mindful of the following standard:

"We note that when applying the justification statute, the court should focus not only on the degree of force exerted by the parent but also on the age and the physical and mental condition of the child who has been disciplined."

Applying that standard, we find that the circumstances in this case are completely opposite those in *Ogin.* In our case, the child was not an infant, but 11 years of age at the time. And unlike *Ogin,* the motive of the

parent was to discipline the child, not vent their feelings of frustration. She was being verbally disrespectful towards her mother at the time of the incident, which arose out of similar conduct earlier in the day towards her teacher. Moreover, she had been discovered by the defendant to have been stealing and had continued to engage in such conduct, notwithstanding the mother's attempts to stop her, including contacting the police and the managers of the stores where she had been doing the stealing. There is likewise no evidence that the defendant was acting in a "rage" or in a "frenzy" at the time of the incident; on the contrary, the evidence shows that she was, although obviously angry, very much under control. Furthermore, there is no evidence that Michelle sustained any injury or disfigurement, other than some bruises from the paddle on her buttocks. Finally, the record indicates that the defendant fully cooperated with the investigation of Children's Services and the police and provided no false or misleading information.

Based upon the foregoing, we conclude that, based upon the evidence adduced at the preliminary hearing and at the evidentiary hearing before this court, the Commonwealth has not met its burden of establishing a prima facie case against the defendant on either of the criminal charges filed against her arising out of this incident.

Accordingly, we now enter the following attached order.

## ORDER

And now, August 5, 1992, upon consideration of the petition for writ of habeas corpus filed by the defendant in the above-captioned matter, the same is hereby granted and the defendant is hereby discharged.