J-A12029-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
v. :
:
CHRISTY MARIE HOMAN, :
:
Appellee : No. 1009 MDA 2014

Appeal from the Order entered June 4, 2014,
Court of Common Pleas, Cumberland County,
Criminal Division at No. CP-21-CR-0003113-2013

BEFORE: BOWES, DONOHUE and ALLEN, JJ.

MEMORANDUM BY DONOHUE, J.: **FILED JUNE 10, 2015**

Appellant, the Commonwealth of Pennsylvania ("Commonwealth"), appeals from the order of the trial court dated June 4, 2014 granting a motion for extraordinary relief pursuant to Rule 704 of the Pennsylvania Rules of Criminal Procedure and ordering a new trial. For the reasons that follow, we vacate the trial court's order, affirm the jury's verdict, and remand the case for resentencing.

In its opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, the trial court provided the following brief summary of the evidence presented at the trial of Appellee, Christy Marie Homan ("Homan"), on the charges of simple assault, 18 Pa. C.S.A. § 2701, and summary harassment, *id.* § 2709.

> The simple assault alleged in this case arose out of
> events which occurred on August 3, 2013. Around

midday on that date, [Homan] commenced a period of partial custody or visitation with her two children, [H.B. (age 12)] and [N.B. (age 5)]. The visit was supervised by [Homan's] brother, Aaron.[2] [Homan] and her brother attempted to initiate a conversation concerning whether the group should go for lunch. According to the Commonwealth's testimony, the children, however, decided to give their mother and her brother something of the "silent treatment." This clearly angered [Homan]. When the car came to a stop in front of Rita's (an Italian ice parlor), [Homan] expressed her extreme anger at the children and used extensive profanity in admonishing them for not only treating her but, more importantly, their uncle with disrespect. [H.B.] sat in the backseat of the car and continued to refuse to respond to her mother. At that point, [Homan] forcefully removed [H.B] from the car grabbing her violently by the neck and arms. In the meantime, a witness had called the police and the incident came to an end.

_____

[2] The fact that the visitation was supervised conveyed to the [c]ourt, and no doubt to the jury, that [Homan] has anger issues.

Trial Court Opinion, 9/3/2014, at 3-4.

The jury found Homan guilty of simple assault and the trial court then found her guilty of summary harassment and set a date for sentencing. Homan then filed a written "PA CRIM P. 704(B) PRE-SENTENCE MOTION FOR EXTRAORDINARY RELIEF," alleging that the guilty verdict was against the weight of the evidence and not supported by sufficient evidence. On June 4, 2014, the trial court granted the motion and ordered a new trial. The

Commonwealth has appealed this ruling, presenting the following issue for our consideration and determination:

> Did the trial court err in ruling there was insufficient evidence to disprove parental justification when [Homan] directed a profanity laden, public tirade against her 12 year old daughter before finally choke slamming her up against a car – erroneously believing that section 509 'harkens' back to a time when such behavior was legally permissible?

Commonwealth's Brief at 1.

In its Rule 1925(a) opinion, the trial court admits that it made two errors in its ruling. First, it should not have considered Homan's written Rule 704 motion for extraordinary relief because such motions must be made orally. Pa.R.Crim.P. 704(B)(1) ("Under extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial."); *Commonwealth. v. Howe*, 842 A.2d 436, 441 (Pa. Super. 2004) ("The plain terms of Rule 704(B) does not permit the filing of a written motion for extraordinary relief prior to sentencing."). Second, the trial court admits that it granted the motion principally upon Homan's weight of the evidence arguments, although upon reflection it should have focused on the sufficiency of the evidence. Trial Court Opinion, 9/3/2014, at 2-3. The trial court now concedes that Homan's weight of the evidence argument was clearly just "boilerplate" and inadequate to preserve the issue for appellate consideration. *Id.* at 3.

On appeal, however, at the Commonwealth's request and for the sake of judicial economy, we will address Homan's challenge to the sufficiency of the evidence. We note that the trial court addressed Homan's sufficiency of the evidence argument in its Rule 1925(a) opinion, and thus there is no impediment to this panel addressing it substantively in this appeal.

We begin with our scope and standard of review for a sufficiency claim:

> In conducting a sufficiency of the evidence review, we view all of the evidence admitted, even improperly-admitted evidence. We consider such evidence in a light most favorable to the Commonwealth as the verdict winner, drawing all reasonable inferences from the evidence in favor of the Commonwealth. When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail.
>
> The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." In addition, the Commonwealth can prove its case by circumstantial evidence. Where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" a defendant is entitled to relief. This Court is not permitted "to re-weigh the evidence and substitute our judgment for that of the fact-finder."

*Commonwealth v. Haynes*, 2015 WL 1814017, at 15* (Pa. Super. April 22, 2015).

In its written decision, the trial court ruled that the Commonwealth did not present sufficient evidence to prove beyond a reasonable doubt that

Homan's actions were not justifiable pursuant to section 509(1) of the Pennsylvania Crimes Code, which provides in relevant part as follows:

**§ 509. Use of force by persons with special responsibility for care, discipline or safety of others**

The use of force upon or toward the person of another is justifiable if:

(1) The actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor or a person acting at the request of such parent, guardian or other responsible person and:

(i) the force is used for the purpose of safeguarding or promoting the welfare of the minor, including the preventing or punishment of his misconduct; and

(ii) the force used is not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation.

18 Pa. C.S.A. § 509(1). The trial court found that the Commonwealth's evidence was insufficient to prove either subsection of section 509(1) beyond a reasonable doubt, including that Homan's use of force against H.B. was not intended for proper punishment and was not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain, mental distress, or gross degradation. Trial Court Opinion, 9/3/2014, at 5-6. In so ruling, the trial court indicated that section 509 "harkens back to a time when the striking of children at home or

at school was completely acceptable and it mattered not whether it occurred in front of others or left a mark." *Id.* at 5.

In *Commonwealth v. Ogin*, 540 A.2d 549 (Pa. Super. 1988), this Court made clear that our legislature's adoption (in 1972) of section 509 was a compromise between a parent's continuing right to use corporal punishment and the need for "limits regarding the type and severity of the corporal punishment which a parent may impose." *Id.* at 554. Put another way, we recognized that while we must "ensure that the state through its criminal justice system does not unduly interfere with the private realm of family life," it is also the case that the law "long ago abandoned the view that children are essentially chattels of their parents without independent legal rights." *Id.*

The language of section 509(1) plainly signals that the requirements of subsections 509(1)(i) and 509(1)(ii) are independent conditions, such that the parent/defendant is not entitled to the benefit of a justification defense unless the obligations under **both** subsections are satisfied. *Id.* Because criminal charges are involved, however, the Commonwealth bears the burden of proof to show, beyond a reasonable doubt, that the defendant is not entitled to a justification defense.[1] *Commonwealth v. Douglass*, 588

---

[1] The trial court indicated that while it instructed the jury on the justification defense in section 509(1), it may not have indicated that the burden of proof on its elements was proof beyond a reasonable doubt. Trial Court Opinion, 9/3/2014, at 5. This issue is not presently before this Court.

A.2d 53, 56 (Pa. Super. 1991). Accordingly, the Commonwealth must introduce evidence at trial to prove, beyond a reasonable doubt, that the elements of **either** subsection 509(1)(i) or 509(1)(ii) are not present in the case at issue.

In the current case, the Commonwealth argues that it presented sufficient evidence to disprove both subsections 509(1)(i) and 509(1)(ii). Based upon our review of the certified record and applying our standard of review for sufficiency challenges, we agree. With respect to subsection 509(1)(i), the Commonwealth insists that sufficient evidence was admitted to permit the jury to find that Homan's violent acts were not undertaken for the purpose of "safeguarding or promoting the welfare" of H.B., but rather were the product of her extreme anger. Commonwealth's Brief at 17. In **Commonwealth v. Kramer**, 371 A.2d 1008 (Pa. Super. 1978), this Court recognized that it is "absolutely crucial to establish [] the particular state of mind of the parent when administering the punishment," and thus we posed the question in this way: "Was it accomplished with an attitude of proper parental responsibility for teaching the child right from wrong; was the offending conduct justification for the severity of the punishment, or was the parent acting with a malicious intent and thereby abusing the privilege or his relationship with the child?" **Id.** at 1011; **see also Boland v. Leska**, 454 A.2d 75, 78 (Pa. Super. 1982) ("[P]ermissible corporal punishment …

- 7 -

becomes malicious abuse … [when the] point is reached when the parent or guardian acts with malicious intent in so punishing the child.").

In the above-quoted portion of its written decision (*supra* pages 1-2), the trial court determined that H.B.'s refusal to talk to her mother and uncle "clearly angered [Homan]," and that Homan "expressed her extreme anger" when the car stopped and she removed H.B. from the vehicle, yelling profanity at her and grabbing her violently by the arms and neck.  Trial Court Opinion, 9/3/2014, at 3.

The record on appeal supports the trial court's factual findings.  Traci Bouder, an employee at Rita's who witnessed the events at issue, testified at trial that she observed Homan and her brother screaming at H.B. and N.B. while the children were still in the back seat of the car.  N.T., 5/13/2014, at 10-11.  Bouder then saw Homan grab H.B. in the neck area, pull her out of the car, and then, while holding H.B. by the hands and wrists, put her face very close to H.B.'s and started "spit screaming" expletives at her, repeatedly telling her to "shut the fuck up," and shaking her.  *Id.* at 11-13.  Bouder called the police because "I felt it was all wrong."  *Id.* at 12.  H.B. described Homan's actions similarly, testifying that Homan repeatedly yelled "F-you" at her in an "outside voice," and then, while "jacking me up against the car," began to choke her, not stopping until the police arrived.  *Id.* at 23-26.

Viewing this evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences in its favor, the jury could have reasonably found that Homan's actions were the result of extreme anger, rather than for the purpose of "safeguarding or promoting the welfare" of H.B, as required by subsection 509(1)(i). In the context of a sufficiency of the evidence challenge, it is not this Court (or the trial court) to weigh the evidence and substitute our judgment for that of the fact-finder. **Haynes**, 2015 WL 1814017, at 15*.

Likewise, the Commonwealth contends that pursuant to subsection 509(1)(ii), it introduced sufficient evidence to prove that Homan's actions, including yelling profanities at H.B. and the grabbing her by the arms and neck, were "designed (or intended) to cause extreme pain, or mental distress, or gross degradation." Commonwealth's Brief at 17. Regarding "extreme pain," H.B. testified that getting pinned against the car was "painful" and that the grabbing of her wrists was "kind of" painful. N.T., 5/13/2014, at 23-26. H.B.'s body later showed bruising. **Id.** at 69-50. We note that in **Douglass**, however, this Court held that subsection 509(1)(ii)'s reference to "extreme pain" placed a high burden on the Commonwealth, requiring proof of a level of pain beyond mere "substantial pain." **Douglass**, 588 A.2d at 56.

We need not decide whether the pain Homan inflicted on H.B. here qualified as "extreme pain" as required by **Douglass**, however, since there

was clearly sufficient evidence to establish that Homan's actions resulted in mental distress and gross degradation to H.B. The Commonwealth argues, persuasively we think, that "there can be no other plausible explanation for screaming 'fuck you' and choking a 12 year old girl in public, but to degrade her and cause her mental anguish." Commonwealth's Brief at 17. Bouder testified that the events she observed were severe enough to make her cry, and that when the police arrived, N.B. was "in trauma" and "ran to the cop like it was her savior" and "climbed up on her like a cat." N.T., 5/13/2014, at 14. H.B. testified that when the police arrived, she jumped into the police car on "the other side, to get as far away as I could get away from her." *Id.* at 26. Officer Briana Gaumer, the first police officer to arrive at the scene, testified that H.B. "looked terrified ... and confused" and "crawled over her mother and ran to me and began clawing at me and screaming please help me, and trying to climb me." *Id.* at 31. According to Officer Gaumer, both girls were "hysterical" and got into the back seat of her patrol car so they could stay together and hold on to each other. *Id.* at 31-32. H.B. and N.B. were so scared of their mother at that point that when Officer Gaumer offered to crack the car window for them, H.B. said, "no, no, no, I don't want her to come in here." *Id.* at 32.

Viewing this evidence in the light most favorable to the Commonwealth, as our standard of review requires, the jury could reasonably have found, beyond a reasonable doubt, that Homan's actions

resulted in mental distress and gross degradation to H.B. The jury, as the fact-finder, was free to believe all, part, or none of the evidence presented. *Haynes*, 2015 WL 1814017, at 15*. Based upon our review of the evidence in the certified record on appeal, we conclude that the Commonwealth introduced sufficient evidence to support the jury's verdict finding Homan guilty of simple assault and rejecting the defense of parental justification under section 509(1).

The trial court's order dated June 4, 2014 is hereby vacated and the jury's verdict is reinstated. The case is remanded to the trial court for resentencing in accordance with the jury's verdict. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/10/2015