J-S44036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ERRIK WADE PARKS | |
| Appellant | No. 262 WDA 2015 |

Appeal from the Judgment of Sentence January 28, 2015
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0000725-2013

BEFORE:  LAZARUS, J., STABILE, J., and JENKINS, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 28, 2015**

Errik Wade Parks appeals from the judgment of sentence imposed in the Court of Common Pleas of Fayette County after he was convicted of one count each of simple assault,[1] recklessly endangering another person,[2] and harassment – subjecting other person to physical contact.[3]  Upon careful review, we affirm.

The trial court has set forth the facts of this matter as follows:

The crimes occurred on April 9, 2013, when [C.W.], a child born on December 9, 2003, and her brother were present at their home on Lawton Avenue, Uniontown, Fayette County, Pennsylvania.  [Parks] was the live-in boyfriend of [C.W.'s]

_____

[1] 18 Pa.C.S. § 2701(a)(1).

[2] 18 Pa.C.S. § 2705.

[3] 18 Pa.C.S. § 2709(a)(1).

mother. [C.W.] was in the yard playing with her brother and their friends, and [Parks] had previously told the children that if they came inside, he would beat them with a belt. Nevertheless, [C.W.] went inside her residence to get a drink. When she tried to go back outside, [Parks] hit her on her leg, her arm, and on her back, above her derriere, with a belt he took off of his pants. The blows from the belt hurt the child "a lot."

At the time [Parks] began to hit the child with his belt, [C.W.'s mother] was lying on the floor, sleeping. Ms. Price awoke when the child's Aunt Danielle [Marie Kulenovic] walked into the house and started screaming as she observed [Parks] hitting the child. Danielle Kulenovic then took [C.W.] with her to the child's grandmother's house, and from there to the police station. After leaving the police station where photographs of the child's bruises were taken, the grandmother took [C.W.] to the hospital. The photographs, specifically Commonwealth's Exhibits 4, 5, and 6, show red marks and black and blue marks on the child's hand, arm, and leg.

Ms. Kulenovic testified that she went to the child's home at 50 Lawton Avenue, Uniontown, on the date of the incident because [C.W.] and Christopher repeatedly called their grandmother to report that they were getting beaten and were not allowed in the house. Before entering the house, Ms. Kulenovic looked through the window and saw [Parks] beating [C.W.] with a belt. The child was holding onto the back of the couch and crying, while the child's mother was across the room. Ms. Kulenovic observed three blows to the child before she entered the house and told [Parks] to stop. Ms. Kulenovic observed bruises and welts at various places on the child's body.

Lieutenant Thomas Kolencik, a police officer with the City of Uniontown, Fayette County, police department, told the Court that he took the photographs admitted as Commonwealth['s] exhibits and personally observed injuries on the child's upper thigh buttocks area, her hand, and her arm. He opined that one of the bruises on the child's thigh shown in Commonwealth's Exhibit 6, measured about two inches and was inflicted by the buckle on [Park's] belt.

[C.W.'s] mother testified on [Parks'] behalf that he had never before physically punished the child and his use of his belt to hit her was the first time he had done so. The court found the mother's testimony to be less than credible, as was her claim

- 2 -

that [Parks] held the buckle of the belt in his hand while he was hitting the child, especially in light of Commonwealth's Exhibit 6 which demonstrates otherwise. Aside from her confirming testimony that [Parks] did hit [C.W.] with his belt, the court gave no weight to the mother's testimony.

Trial Court Opinion, 3/24/15, at 1-3 (citations omitted).

On December 11, 2014, following a non-jury trial, Parks was found guilty of the aforementioned offenses. The court sentenced Parks on January 28, 2015, to six to twelve months' imprisonment and various fines. Parks then filed a timely notice of appeal to this Court, as well as a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On appeal, Parks raises the following issues, *verbatim*, for our review:

1. Did the Commonwealth present insufficient evidence to establish beyond a reasonable doubt the charge of simple assault, in that the Commonwealth failed to establish the level of injury or that the injuries occurred on the date [Parks] spanked the child?

2. Did the trial court err in failing to consider [Parks'] justification defense, in that, [Parks] administered corporal punishment in the presence of the child's mother to consequence the child for her misbehavior?

Appellant's Brief, at 8.

Parks first challenges the sufficiency of the evidence to establish his conviction for simple assault. Parks argues that the Commonwealth failed to prove that the injuries sustained by C.W. satisfied the level of injury required for simple assault. Parks also claims that the Commonwealth failed to prove that the injuries to C.W. occurred on the date that Parks spanked C.W.

We review a sufficiency of the evidence claim under the following

standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Vargas*, 108 A.3d 858, 867-68 (Pa. Super. 2014)

(brackets omitted).

Pennsylvania's simple assault statute provides, in relevant part:

**§ 2701. Simple assault.**

**(a)** Offense defined. — Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

> (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]

18 Pa.C.S. § 2701. Bodily injury is defined as "impairment of physical condition

or substantial pain." 18 Pa.C.S. § 2301. Thus, one is guilty of simple assault

where he intentionally, knowingly, or recklessly causes one to suffer

substantial pain. ***Commonwealth v. Douglass***, 588 A.2d 53, 55 (Pa. Super. 1991).

Here, the bruises in the pictures, admitted as Exhibits 1 through 6, are clearly evidence of bodily injury, which Parks intentionally, knowingly, or recklessly caused by hitting C.W. with his belt buckle. C.W. testified that the injuries "at first hurt a lot, the first few days." N.T. Trial, 9/18/14, at 25. This is indicative of "substantial pain" under section 2301.

Parks argues that Jayme Shaffer, the supervisor at Fayette County Children and Youth Services, concluded that the injuries sustained did not rise to the level indicating physical abuse. However, Shaffer based her conclusion on the improper standard, "serious bodily injury," while mere "bodily injury" is the required for simple assault. ***Id.*** at 51.

Parks also argues that the bruises and injuries to C.W. were not proven to be the result of the spanking on the date in question and that the injuries were the result of C.W.'s brother hitting her with a bungee cord. However, Officer Thomas Kolencik testified that the injuries in the photographs, especially in exhibit 6, were indicative of a belt buckle. ***Id.*** at 46. Judge Wagner also took judicial notice of the shape and appearance of a bungee cord for purposes of contrasting its shape with the "L" shape of C.W.'s bruise. N.T. Trial, 11/14/14, at 17. C.W.'s aunt also testified that she saw "[Parks] beating [C.W.] with a belt" through the window on the day of the alleged beating. N.T. Trial, 9/18/14, at 32. A reasonable inference could be drawn by a fact finder that the bruises in question resulted from the

beating witnessed by C.W.'s aunt. Accordingly, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that there was sufficient evidence to demonstrate that Parks intentionally, knowingly, or recklessly caused bodily harm to C.W. by hitting her with the belt buckle and that the use of the belt caused C.W.'s injuries.

Next, Parks claims that the trial court erred in failing to consider Parks' justification defense. Parks argues that he was merely administering corporal punishment in the presence of the child's mother as a consequence to the child for her misbehavior.

Pennsylvania's statute for the use of force by persons with special responsibility for care, discipline, or safety of others provides, in relevant part, as follows:

> **§ 509. Use of force by persons with special responsibility for care, discipline or safety of others**
>
> The use of force upon or toward the person of another is justifiable if:
>
> (1) The actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor or a person acting at the request of such parent, guardian or other responsible person and:
>
>> (i) the force is used for the purpose of safeguarding or promoting the welfare of the minor, including the preventing or punishment of his misconduct; and
>>
>> (ii) the force used is not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation.

18 Pa.C.S.A. § 509.

Parks claims that he was administering corporal punishment to C.W. as a form of discipline for truancy and for being disrespectful to her mother. According to Parks, C.W.'s mother gave him permission to discipline C.W. and, indeed, he was acting at her request. C.W.'s mother also testified that she watched Parks hitting C.W. with the belt and that, because she was pregnant, she could not discipline C.W. herself.

In **Commonwealth v. Ogin**, 540 A.2d 549 (Pa. Super. 1988), this Court held that, by hitting their two-year-old daughter hard enough to fall backward into a wall, the defendants' conduct exceeded their privilege to administer corporal punishment under section 509 of the Crimes Code. This Court held that a factfinder could have fairly concluded beyond a reasonable doubt that the defendants used force which was known to create at least a substantial risk of extreme pain or mental distress within the meaning of section 509(1)(ii). Therefore, appellants' defense of justification was properly rejected.

The term "extreme" in section 509(1)(ii) is synonymous with excessive. **Commonwealth v. Douglass**, 588 A.2d 53, 56 (Pa. Super. 1991). "The statute simply says pain inflicted as a result of discipline must not be excessive. The punishment must be justifiable and fit the misconduct. Excessive discipline is contrary to the welfare of the child, even when discipline is justifiable." **Id.**

Here, there is no credible evidence that Parks was responsible for the general care and supervision of C.W. or that Parks was acting at the request

of C.W.'s mother, as C.W. testified that her mother was sleeping on the floor while the beating took place. N.T. Trial, 9/18/14, at 16. Although Parks and C.W.'s mother testified that the beating occurred with the mother's permission, the trier of fact is free to believe all, part or none of the witnesses' testimony. **Vargas**, 108 A.3d at 868. The trial court found the testimony of Parks and C.W.'s mother to be less than credible and gave more weight to C.W.'s testimony. **See** Trial Court Opinion, 3/24/15, at 3.

Moreover, the punishment was not conducted for the purpose of safeguarding or promoting the welfare of the child as required by the statute. C.W. testified that Parks beat her with the belt for coming inside the house to get a drink after he told C.W. and the other children not to come inside the house. N.T. Trial, 9/18/14, at 16. C.W.'s testimony is supported by that of Officer Kolencik who stated that Parks told him, "I don't want those fucking kids in my house anyway." **Id.** at 42.

Even if Parks was acting at the request of C.W.'s mother, hitting a child with a belt buckle is an excessive punishment, which creates at least a substantial risk of extreme pain or mental distress within the meaning of section 509(1)(ii). The punishment was not justifiable, did not fit the alleged misconduct, and exceeded the force authorized under section 509 for purposes of discipline. Accordingly, the trial court appropriately rejected Parks' claim of justification.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/28/2015</u>