582 A.2d 1

### COMMONWEALTH of Pennsylvania

v.

### Richard TULLIUS, Appellant.

Superior Court of Pennsylvania.

Submitted July 23, 1990.

Filed Sept. 19, 1990.

Reargument Denied Nov. 14, 1990.

Stanton D. Levenson, Pittsburgh, for appellant.

Claire C. Capristo, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before CAVANAUGH, TAMILIA and HESTER, JJ.

PER CURIAM:

This is a direct appeal from the judgment of sentence of two years probation imposed following appellant's convic-

tion at a bench trial of simple assault and harassment. We affirm.

The facts in this matter, as revealed by the record, are as follows. On February 14, 1989, appellant, Richard Tullius, a sixth grade teacher in the McKeesport Area School District, was on hall patrol during the 11:35–11:50 a.m. lunch period at Cornell Middle School. Albert Stinson, age thirteen, a sixth grade student, was walking behind a large group of students on his way to class from the cafeteria. Appellant shouted down the hall to Albert to move to the right side of the hallway, in keeping with school policy when hallways are congested, as they were that day. When Albert did not comply, appellant shouted at him again. When Albert still ignored appellant's command, appellant stepped in front of the child and ordered him to walk to the end of the hall and return on the right side of the corridor. While Albert testified that he followed the instruction, appellant testified that Albert walked down the hall, but returned on the wrong side again. Appellant alleged he sent Albert down the hallway again, and although the child started back on the wrong side, he eventually moved to the right.

As Albert proceeded to his classroom, appellant testified that he told him to "stop acting like a darn fool," whereupon Albert retorted, "I'm not a darn fool; you are." Notes of Testimony ("N.T."), 8/22/89, at 61. Albert testified that appellant called him an obscene name to which the boy responded, "[D]on't cuss at me." *Id.* at 18.

Appellant then attempted to take hold of Albert. Albert testified that appellant grabbed his arms and slammed him against the lockers a number of times, while appellant claimed he just pushed the child back against them to restrain him. Diane Easly, Albert's teacher, observed the altercation and sent another pupil to summon the principal. Ethel Balas, the assistant principal, appeared and told appellant to release the child, but appellant failed to comply with this directive. Balas again ordered appellant to release Albert, and this time appellant complied. Mrs. Balas took Albert to the office where he was examined by the

guidance counselor. Bruises were found on Albert's arms, ear, back, and neck. Mrs. Balas then summoned the school nurse, Jo Ann Rogers, who examined Albert and observed the same injuries.

Appellant contends that the evidence was insufficient to support the conviction for assault in that the Commonwealth failed to prove beyond a reasonable doubt that his use of force was not justified under 18 Pa.C.S. § 509(2). Appellant asserts that while Albert sustained bruises, there was insufficient evidence that appellant intended to cause extreme pain, mental distress, or gross degradation.

In reviewing a challenge to the sufficiency of the evidence we determine

> whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Akers*, 392 Pa.Super. 170, 181, 572 A.2d 746, 751 (1990), quoting *Commonwealth v. Jackson*, 506 Pa. 469, 472–73, 485 A.2d 1102, 1103 (1984). It is within the province of the fact finder to determine the weight to be given to each witness's testimony and to believe all, part, or none of the evidence. *Commonwealth v. Carbone*, 524 Pa. 551, 574 A.2d 584 (1990); *Commonwealth v. Parker*, 387 Pa.Super. 415, 564 A.2d 246 (1989). We address the arguments of the parties and evaluate the sufficiency of the evidence with these standards in mind.

Appellant was convicted of simple assault, which requires the actor to attempt to cause or intentionally, knowingly, or recklessly causing bodily injury to another, 18 Pa.C.S. § 2709, and harassment, a summary offense, which requires that a person, with intent to harass, annoy or alarm another, strike, shove, kick or otherwise subject another to physical contact or threaten to do the same. 18 Pa.C.S. § 2709. Bodily injury is defined by 18 Pa.C.S. § 2301 as the "impairment of physical condition or substantial pain." In

*Commonwealth v. Ogin,* 373 Pa.Super. 116, 121, 540 A.2d 549, 552 (1988), we stated, "The existence of substantial pain may be inferred from the circumstances surrounding the use of physical force even in the absence of a significant injury." Further, in *Commonwealth v. Jorgenson,* 341 Pa.Super. 550, 492 A.2d 2 (1985), *rev'd on other grounds,* 512 Pa. 601, 517 A.2d 1287 (1986), we found that striking the victim twice across the face was sufficient to support a conviction for simple assault. *See also Commonwealth v. Bryant,* 282 Pa.Super. 600, 608, 423 A.2d 407, 411 (1980) (simple assault occurred when defendant threw victim to the ground).

The defense of justification provides, in pertinent part:
**§ 509. Use of force by persons with special responsibility for care, discipline or safety of others.**
The use of force upon or toward the person of another is justifiable if:

. . . .

(2) The actor is a teacher or person otherwise entrusted with the care or supervision for a special purpose of a minor and:

(i) the actor believes that the force used is necessary to further such special purpose, including the maintenance of reasonable discipline in a school, class or other group, and that the use of such force is consistent with the welfare of the minor; and

(ii) the degree of force, if it had been used by the parent or guardian of the minor, would not be unjustifiable under paragraph (1)(ii).

 Section 509(2)(i) and (ii) involve independent requirements. For appellant's actions to have been justified, he must have complied with both standards. Further, in assessing the propriety of the degree of force utilized, § 509(2)(ii) requires that the fact finder determine whether a parent or guardian would have been justified in utilizing that same degree of force. 18 Pa.C.S. 509(1)(ii) provides:

(ii) the force used is not designed to cause or known to create a substantial risk of causing death, serious bodily

injury, disfigurement, extreme pain or mental distress or gross degradation.

We disagree with appellant's arguments that Albert's injuries did not substantiate serious bodily injury, extreme pain, mental distress, or gross degradation. Appellant premises this argument on the following facts: the boy did not cry, the bruises did not bleed, and there was no evidence that Albert sought medical treatment. Initially, we reject appellant's contention that the child could not have suffered mental distress or gross degradation because Albert's emotional condition after the incident was "very quiet." This assessment is based on the testimony of Jo Ann Rogers, the school nurse. Ms. Rogers, who was at another school when the incident occurred, was summoned by Mrs. Balas and examined Albert ten to fifteen minutes after the assault. We attach no significance to the fact that Ms. Rogers described Albert as quiet at that time, especially in light of eyewitness testimony that Albert was struggling and crying out during the incident.

■ Appellant also contends that the evidence was insufficient to prove that Albert's punishment exceeded the parameters of § 509(2). We disagree. We find the testimony of the two objective eyewitnesses most revealing on this issue. The assistant principal, Mrs. Balas, testified as follows:

A. I saw Mr. Tullius holding Albert Stinson against a locker, and as I went through the door, *he banged him against the locker.*

*I went over at that time and took a hold of Albert and I told Mr. Tullius to let Albert go,* I had him. *Mr. Tullius did not.*

Q. What do you mean he did not let him go?

A. He did not let him go at that time, and I asked him again to let Albert go; I told him, I have him.

N.T., 8/22/89, at 39–40 (emphasis added).

Mrs. Easly, who observed the assault for a longer period, testified as follows:

A. *I saw Mr. Tullius coming around the corner, holding Albert's arms, upper arms.*

Q. How was he holding Albert?

A. He was to his left and walking him on down the hall with his arms—his hands on his upper arms.

Q. So he had one hand on each arm?

A. Yes.

. . . .

Q. What did you notice after that?

A. Well, I turned to look in my room and when I turned back to see what was happening, *Mr. Tullius pushed Albert up against the lockers.*

Q. When you say "pushed him up against the lockers"; was that a hard or soft push?

A. Forcible.

Q. Was Albert up against the locker this time?

A. Yes.

. . . .

Q. Then what happened?

A. Ahh—Mr. Tullius—at that point, I turned around and told a student to go and get the principal and *Mr. Tullius got hold of his arm again and bounced him up against the locker.*

Q. *And did that make a loud or soft sound?*

A. *Loud.*

Q. And then what did Mr. Tullius do after that?

A. Held him up against the locker, restrained him.

Q. Could you hear what Mr. Tullius was saying to Albert?

A. No, I didn't.

Q. What do you remember happened next?

A. I turned, the student came back from the office. I turned to ask him if someone was coming and then I turned back to look and *Mr. Tullius was still holding him there* and the principal and a counselor were coming up the stairs. I could see through the stairwell because there is glass.

At that point, I turned to look again and as the counselor and principal were coming around the corner, I—I guess Albert had gotten away or moved away again because *Mr. Tullius bounced him up against the locker again.*

They were—they were coming around the corner.

Q. And at that time, when he pushed him up against the locker, *did it make a loud or soft sound?*

A. *Loud.*

N.T., 8/22/89, at 27–29.

According to the witnesses, appellant, who is six feet tall and weighs 195 pounds, N.T., 8/22/89, at 71, slammed a thirteen-year-old boy weighing between 110 and 115 pounds against lockers at least three times, held him there, and initially refused to release him when ordered to do so by his supervisor. Clearly, appellant's actions in slamming this child against the lockers repeatedly while gripping his arms with sufficient force to cause bruising and swelling, N.T., 8/22/89, at 46–47, was not justified behavior as defined by 18 Pa.C.S. § 509(2). While no teacher must endure defiance and provocation, appropriate responsive behavior must be utilized and modeled. We believe that the evidence is sufficient to support appellant's conviction for simple assault.

In this Commonwealth, a teacher may inflict reasonable corporal punishment upon a student without incurring criminal liability. There is a dearth of appellate case law which has established parameters and interpreted the extent of justifiable punishment encompassed by 18 Pa.C.S. § 509(2). In applying this section, we believe that the fact finder must assess whether the teacher believed the use of force was necessary to maintain reasonable discipline and whether it was consistent with the child's welfare. Thus, in the instant case the trial court had to resolve a question of fact based upon, and in consideration of, the child's misconduct, the nature and severity of the punishment inflicted, the age and size of the child and alternative means of discipline that were available. Compare *Commonwealth v. Ogin, supra,*

373 Pa.Super. at 127, 540 A.2d at 555 ("[W]hen applying the justification statute, the court should focus not only on the degree of force exerted by the parent but also on the age and the physical and mental condition of the child who has been disciplined.")

In light of our scope of review, we find that appellant's conviction is supported by the evidence.

Judgment of sentence affirmed.