J-A11024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SHARON PATRICIA WILLIAMS | : | |
| | : | |
| Appellant | : | No. 328 WDA 2020 |

Appeal from the Judgment of Sentence Entered February 5, 2020
In the Court of Common Pleas of Butler County
Criminal Division at No(s): CP-10-SA-0000215-2019

BEFORE: McLAUGHLIN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY KING, J.:                    **FILED: JUNE 28, 2021**

Appellant, Sharon Patricia Williams, appeals from the judgment of sentence entered in the Butler County Court of Common Pleas, following her bench trial conviction for summary harassment.[1]  After careful review, we reverse Appellant's conviction, and vacate the judgment of sentence.

In its opinion, the trial court sets forth the relevant facts of this case as follows:

> [Appellant] was employed as a child-care teacher at Doodlebug, a private childcare operation located in Adams Township, Butler County, Pennsylvania, when she was cited by Adams Township Police for harassment of a young boy in her class.
>
> *    *    *
>
> The alleged victim's mother testified that, through closed

---

[1] 18 Pa.C.S.A. § 2709(a)(1).

circuit video she accessed on her cell phone, she observed her son wearing no shirt and dumping Lincoln Logs on himself. [Appellant] was standing next to the boy, who at the time was four years old and suffered from Cerebral Palsy. Mother then observed [Appellant] pick up the boy by the biceps and move him below the camera, out of its visual range. Mother next saw her son seated at a table, still with no shirt on and [Appellant] standing so that the boy could not get out of his seat. Later in the day, when picked up from the childcare facility, the alleged victim exhibited bruises on his right arm, which were covered by a band aid.

Also testifying for the Commonwealth was the Program Coordinator for the day care facility. She testified that, after the incident in question, [Appellant] came to the Coordinator's office crying and stated to her "I hurt [the victim] I hurt him really bad" and "I'm going to lose my job."

(Trial Court Opinion, filed April 9, 2020, at 2-3) (internal record citations omitted).

On February 5, 2020, the court found Appellant guilty of summary harassment. The court sentenced Appellant to pay the costs of prosecution and a fine in the amount of $50.00. Appellant timely filed a notice of appeal on March 2, 2020. The court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on April 3, 2020, and Appellant timely complied.

Appellant raises the following issues for our review:

Whether the trial court erred in finding sufficient evidence that [Appellant] acted with the requisite intent to harass, annoy, or alarm another to prove [Appellant] guilty of summary harassment pursuant to 18 Pa.C.S.A. § 2709(a)(1) beyond a reasonable doubt?

Whether the trial court erred in finding sufficient evidence to disprove beyond a reasonable doubt the affirmative

defense of justification pursuant to 18 Pa.C.S.A. § 509(1) and (2), including but not limited to:

(A) Whether the trial court erred in finding sufficient evidence to disprove beyond a reasonable doubt the force used by [Appellant] was for the purpose of safeguarding or promoting the welfare of the minor, including the preventing or punishment of the minor's conduct, pursuant to 18 Pa.C.S.A. § 509(1)(i), where the minor was misbehaving in a classroom with other children at the time [Appellant] used force upon the minor and the force was used in response to the minor's behavior?

(B) Whether the trial court erred in finding sufficient evidence to disprove beyond a reasonable doubt the force used by [Appellant] was not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation pursuant to 18 Pa.C.S.A. § 509(1)(ii) and 509(2)(ii) where the force used by [Appellant] involved picking up the minor by his arms and placing him in a chair, and the minor did not require or receive any medical treatment and otherwise indicated he was "okay" after the force was used?

(C) Whether the trial court erred in finding sufficient evidence to disprove beyond a reasonable doubt [Appellant] believed the force used was necessary to further the care and supervision for a special purpose of the minor, including the maintenance of reasonable discipline in the school, class, or other group, and that the use of force was consistent with the welfare of the minor, pursuant to 18 Pa.C.S.A.§ 509(2)(i), where the minor was misbehaving in a classroom with other children at the time [Appellant] used force upon the minor and the force was used in response to the minor's behavior?

(Appellant's Brief at 4-5).

For purposes of disposition, we combine Appellant's issues. Appellant

- 3 -

argues that the Commonwealth failed to produce any evidence that she acted with the requisite intent to harass, annoy or alarm the minor to sustain her conviction. Appellant claims she used minimal force to control the minor's misbehavior. Appellant contends she was justified in using minimal force to restrain the minor. Appellant maintains the Commonwealth failed to disprove beyond a reasonable doubt her defense of justification. Further, Appellant insists the Commonwealth failed to establish that Appellant's conduct subjected the minor to a substantial risk of death, serious bodily injury or disfigurement. Appellant submits the Commonwealth did not prove that Appellant's conduct involved force exceeding that permitted by law. Appellant concludes the evidence presented was insufficient to sustain the verdict, and this Court must reverse her conviction and vacate the judgment of sentence. For the following reasons, we agree with Appellant's contentions.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every

- 4 -

element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jackson*, 215 A.3d 972, 980 (Pa.Super. 2019) (quoting

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal*

*denied*, 613 Pa. 642, 32 A.3d 1275 (2011)).

The Crimes Code defines harassment, in relevant part, as follows:

**§ 2709. Harassment**

**(a) Offense defined**.— A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

(1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same;

\* \* \*

18 Pa.C.S.A § 2709(a)(1). "An intent to harass may be inferred from the totality of the circumstances." *Commonwealth v. Lutes*, 793 A.2d 949, 961 (Pa.Super. 2002). *See also Commonwealth v. Blackham*, 909 A.2d 315 (Pa.Super. 2006) (holding Commonwealth presented sufficient evidence to sustain harassment conviction where defendant grabbed child by arm, kept tugging on child's arm, and grabbed child on back of neck, causing bruises).

Instantly, the daycare center employed Appellant as the lead teacher, and her responsibilities included the care and supervision of the minor and 20

- 5 -

other children. (N.T. Trial, 2/5/20, at 36, 39). The minor had a history of "misbehaving" while attending this daycare, and his mother had "multiple conversations" with the daycare's staff concerning the minor's misbehavior. (*Id.* at 12). Appellant testified that after her lunch, a teacher's assistant informed her that the minor's classroom was a "zoo," and wished her good luck with those students. (*Id.* at 37). The minor had been yelling and screaming, and he had removed his shirt. (*Id.* at 38). When Appellant attempted to put his shirt back on him, he became irate and began to scream. He attempted to hit Appellant, who was pregnant at that time. (*Id.* at 38). The minor then dumped toys on the floor and himself. (*Id.* at 39). The minor proceeded to dump bins of toys on the floor which hit other children. (*Id.*) Appellant explained that she tried to calm the minor down and offered him a snack. (*Id.*) Appellant became "flustered" while attempting to maintain order in the classroom. (*Id.* at 40). Appellant contacted the office and asked for another teacher to come to the classroom to help her. The director assistant informed Appellant that she was busy at that moment but would be available to assist her in a few minutes. (*Id.* at 19).

The minor's mother observed Appellant grab her son "by both arms on the outside and [pick] him up and carr[y] him into the blind spot of the camera, which is maybe a foot underneath the door." (*Id.* at 6). She explained that Appellant picked the minor up by his biceps, "by his crease" in his arms. (*Id.* at 17). After Appellant grabbed the minor's arms and lifted

him up, the minor said "[m]y arm is red…" (*Id.* at 41). Subsequently, the minor's mother telephoned the daycare. (*Id.* at 7). While she was on the telephone, she observed her son sitting in a chair with his chest pushed up against the table, while Appellant stood behind him so that he could not get up from the chair. (*Id.*)

The minor's mother asked to speak to her son, and the minor told her that he was okay. (*Id.* at 14). After this incident, Appellant called the daycare's office a second time seeking assistance, and once again she spoke to the director assistant. (*Id.* at 19). Appellant was crying, and she stated that "I hurt [the minor]." (*Id.*) In response to this statement, the director assistant suggested that perhaps it occurred accidentally, and Appellant responded "No, … I hurt him." (*Id.*) Shortly thereafter, Appellant headed to the office to discuss this incident. (*Id.* at 25). While on her way to the office, the program coordinator for the daycare saw Appellant crying. (*Id.*) When the program coordinator asked what happened, Appellant replied "I hurt [the minor]. I hurt [the minor] really bad." (*Id.*) Further, Appellant admitted that "she became angry, that [the minor] was throwing a tantrum, and she just became so angry and she grabbed him." (*Id.*) Appellant repeated several times that "I was just so angry. I am going to lose my job. I hurt him real[ly] bad." (*Id.*)

The minor's grandmother picked the minor up that day from daycare, and she noticed that he had two bruises on his arm. (*Id.* at 8). The

grandmother took pictures of the minor's arm showing the bruises. (*Id.*) In one of those pictures, the minor has a Band-Aid covering one of his bruises. (*Id.* at 14). Appellant also saw "red marks" on the minor's arm. (*Id.* at 47). Appellant did not deny that she caused at least one of the minor's injuries. (*Id.*) Other than the bruises, the minor did not sustain any injuries. (*Id.* at 16). The minor did not seek any medical treatment. (*Id.*)

Viewed in the light most favorable to the Commonwealth, the fact-finder could reasonably conclude that grabbing a 4-year-old by the arms and lifting him up in the air causing bruises on his arms satisfies the elements necessary for a conviction under Section 2709(a)(1), in that there was physical contact with intent to alarm. *See* 18 Pa.C.S.A § 2709(a)(1); *Jackson, supra*; *Blackham, supra*. However, that does not end our inquiry. Having concluded sufficient evidence supports Appellant's conviction, we now must consider whether the teacher justification defense renders Appellant's actions statutorily excusable. *See Commonwealth v. Moyer*, 245 A.3d 1037 (Pa.Super. filed Dec. 1, 2020) (unpublished memorandum).[2]

The Crimes Code defines the teacher justification defense in relevant part, as follows:

> **§ 509.   Use of force by persons with special responsibility for care, discipline or safety of others**

---

[2] An unpublished non-precedential memorandum decision of the Superior Court filed after May 1, 2019, may be cited for its persuasive value. *See* Pa.R.A.P. 126(b)(1) and (2).

The use of force upon or toward the person of another is justifiable if:

\* \* \*

(2) The actor is a teacher or person otherwise entrusted with the care or supervision for a special purpose of a minor and:

(i) the actor believes that the force used is necessary to further such special purpose, including the maintenance of reasonable discipline in a school, class or other group, and that the use of such force is consistent with the welfare of the minor; and

(ii) the degree of force, if it had been used by the parent or guardian of the minor, would not be unjustifiable under paragraph (1)(ii).

\* \* \*

18 Pa.C.S.A § 509(2). **See also** 18 Pa.C.S.A. § 509(1)(ii) (prohibiting force designed to cause or known to create substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation).

"Section 509(2)(i) and (ii) involve independent requirements. For appellant's actions to have been justified, [s]he must have complied with both standards." **Commonwealth v. Tullius**, 582 A.2d 1, 3 (Pa.Super. 1990), *appeal denied*, 527 Pa. 645, 593 A.2d 418 (1991). Further, in assessing the propriety of the degree of force utilized, Section 509(2)(ii) requires that the fact-finder determine whether a parent or guardian would have been justified in utilizing that same degree of force. **See** 18 Pa.C.S.A. § 509(2)(ii).

"In this Commonwealth, a teacher may inflict reasonable corporal punishment upon a student without incurring criminal liability." *See Tullius, supra* at 4. "[T]he legislature has made the Commonwealth's burden in proving school personnel committed assault greater than that of other unspecified classes of persons." *Commonwealth v. Douglass*, 588 A.2d 53, 56 (Pa.Super. 1991). "In applying [Section 509(2)], … the fact finder must assess whether the teacher believed the use of force was necessary to maintain reasonable discipline and whether it was consistent with the child's welfare." *Tullius, supra* at 4. To resolve this question, the fact-finder should consider the child's misconduct, the nature and severity of the punishment inflicted, the age and size of the child and alternative means of discipline that were available. *Id.* Ultimately, the teacher justification defense is a three-prong inquiry, which probes (1) the legal relationship of the actors, (2) the purpose of the force, and (3) the degree and nature of the force used. *See Moyer, supra*.

In *Commonwealth v. Ogin*, 540 A.2d 549 (Pa.Super. 1988), this Court concluded that the appellant's discipline was not justifiable, after a 17-month old baby was "flung...like a rag doll" against an outside wall of an apartment building, backhanded in the face, and had a plate of hot food shoved in her face when she would not eat her dinner. In *Douglass, supra*, this Court similarly ruled that a teacher was not justified in his use of corporal punishment after paddling a first-grader between 50 and 60 times. In *Tullius,*

- 10 -

*supra*, a teacher shoved a backtalking sixth-grader against a locker, causing the child to have bruises on his arms, ear, back and neck; this Court concluded the discipline was not justified.

Instantly, Appellant is a teacher or person otherwise entrusted with care and supervision of the minor. Further, it is undisputed that the force Appellant used was for the punishment of the minor's misconduct, and that the minor's misbehavior had been an ongoing issue. Thus, whether Appellant's force was justifiable depends upon the nature and degree of that force.

The facts of this case are markedly different from those in **Ogin**, **Douglass**, and **Tullius**. Rather, the force Appellant used in lifting the minor up was necessary to further the maintenance of reasonable discipline in the class, and it was consistent with the minor's welfare. **See Tullius, supra**. Further, the minor's injuries did not create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation. **See** 18 Pa.C.S.A. § 509(1)(ii). Under these circumstances, the Commonwealth failed to disprove Appellant's justification defense. **See** 18 Pa.C.S.A. § 509(2). Based upon the foregoing, we reverse Appellant's conviction and vacate her judgment of sentence.

Conviction reversed. Judgment of sentence vacated. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  6/28/2021