J-A27025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                         :              PENNSYLVANIA
                                           :

            v.                                :
                                           :
                                           :

VALENTIN GEORGE IONESCU         :
                                           :

             Appellant                   :       No. 1809 EDA 2024

Appeal from the Judgment of Sentence Entered May 29, 2024
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0001849-2023

BEFORE: BOWES, J., MURRAY, J., and BECK, J.

MEMORANDUM BY MURRAY, J.:              **FILED DECEMBER 16, 2025**

Valentin George Ionescu (Appellant), *pro se*, appeals from the judgment

of sentence imposed after a jury convicted him of one count each of simple

assault and endangering the welfare of children (EWOC).[1] We affirm.

On June 2, 2023, Appellant picked up his two sons, 9-year-old K.I. and

14-year-old D.I., from their mother's (Mother) house. At trial, K.I. testified

that

> [Appellant] picked me up from [Mother's] house and we start
> driving. Me and my brother, [D.I.], we wanted to go to the
> apartment, but instead [Appellant] brings us to Forks Township
> Community Center, and we don't want to be there. So [Appellant]
> gets out the car and tells us to get out the car because he has a
> class to teach. He keeps telling us that we need to get out because
> he has to do something. He has a class to teach, and then he
> opens my door and then grabs me because I was not listening.

---

[1] 18 Pa.C.S.A. §§ 2701(a)(1), 4304(a)(1).

Then I'm standing next to my door, and he goes to my brother's side.

N.T., 4/29/24, at 57.

In the following exchange, K.I. described what next transpired:

Q: [The Commonwealth:] And [Appellant] did what?

A: [K.I.:] He goes to my brother's side of the car.

Q: Okay. So what did you do?

A: I went back into the car and then he comes back. …

Q: What happened when [Appellant] came back?

A: He hit me.

Q: Where did he hit you?

A: In my nose.

Q: … Did it hurt?

A: Yes.

Q: Did you start bleeding?

A: Yes.

Q: When you say he hit you, was it a slap or was it a punch?

A: It felt like a punch.

Q: … Did you start bleeding right away?

A: Yes.

Q: … What happened after he hit you in the face?

A: He leaves and then he starts going into the community center.

Q: … [B]efore he hit you in the face, did he say anything?

A: Yes.

Q: What did he say?

A: He said something in Romanian.

Q: … And what was his tone when he said it in Romanian?

A: He was furious.

*Id.* at 57-58; *see also id.* at 92-93 (D.I. testifying that Appellant hit K.I. in the nose with a closed fist, causing K.I.'s nose to bleed), 94 (D.I. testifying that Appellant "punched my brother.").

K.I. and D.I. entered the community center, where they attempted to clean K.I.'s bloody nose in the bathroom. *Id.* at 59-62, 94-95. K.I. and D.I. testified that K.I. cried for an extended period of time after Appellant hit him. *Id.* at 59-60, 61-62 (K.I. testifying that he was still crying while cleaning his bloody nose in the bathroom, "[b]ecause it hurt."), 92-94; *see also id.* at 123 (community center employee testifying that K.I. was still crying when he exited the bathroom); N.T., 4/30/24, at 6 (second community center employee testifying that K.I. was crying, "hyperventilating, just covered in blood."). Community center employees asked what was wrong, and the boys told them what happened. N.T., 4/29/24, at 63-64, 96-97. D.I. called Mother from the front desk and tried to tell her what happened, but Appellant took the phone from D.I. and hung up. *Id.* A community center employee called the police, who arrived minutes later. *Id.* at 121. Appellant denied striking K.I., and told police K.I. got a bloody nose because of the heat. N.T., 4/30/24, at 20.

The Commonwealth subsequently charged Appellant with the above offenses, as well as one count each of harassment and disorderly conduct.[2] George Nassif, Esquire (trial counsel), represented Appellant.

On April 26, 2024, though represented by trial counsel, Appellant purported to file a *pro se* "Memorandum of Law," which included over 150 pages of exhibits, primarily documents from a child custody matter between Appellant and Mother. **See** Memorandum of Law, 4/26/24. The memorandum concluded by asserting, *inter alia*, that the Commonwealth's witnesses were untrustworthy and the case should be dismissed. **Id.** at 7-8.

The case proceeded to a jury trial on April 29-30, 2024. The Commonwealth presented testimony from K.I., D.I., two community center employees, and a police officer. Appellant presented testimony from a second police officer and Appellant's wife, Iona Ionescu (Ms. Ionescu). Ms. Ionescu testified she was present during the time of the alleged incident. N.T., 4/30/24, at 76-77. She denied Appellant struck K.I., but rather testified K.I. simply had a nosebleed, which she stated was a common occurrence. **Id.** at 77-81.

At the trial's conclusion, the jury convicted Appellant of simple assault and EWOC, and acquitted him of harassment and disorderly conduct. On May

---

[2] 18 Pa.C.S.A. §§ 2709(a)(1), 5502(a)(1).

29, 2024, the trial court imposed an aggregate sentence of two years' probation.

On May 30, 2024, trial counsel filed a "Praecipe for Withdrawal" of his appearance. The trial court did not act on the praecipe, and did not grant trial counsel leave to withdraw. On June 7, 2024, Appellant filed a *pro se* "Motion for Judgment of Acquittal" and "Motion to Vacate Judgment and for a New Trial." On June 10, 2024, the trial court entered orders denying both *pro se* motions.

On June 28, 2024, Appellant timely filed a *pro se* notice of appeal. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed a *pro se* concise statement. The trial court filed a statement in lieu of opinion under Rule 1925(a).

On October 21, 2024, this Court remanded to the trial court for a determination of Appellant's representation status. Order, 10/21/24. By orders entered October 29 and November 19, 2024, the trial court granted trial counsel leave to withdraw from representation. On November 19, 2024, the trial court held a hearing pursuant to **Commonwealth v. Grazier**, 713

A.2d 81 (Pa. 1998), during which Appellant made a knowing, intelligent, and voluntary decision to proceed *pro se*. N.T., 11/19/24, at 4-9.[3]

Appellant raises nine issues for our review:

1. Whether the evidence presented at trial was insufficient to establish guilt beyond a reasonable doubt for simple assault and [EWOC]?

2. Whether the evidence presented at trial was insufficient to disprove the entitlement of defense justification [*sic*] of reasonable parental discipline?

3. Whether the trial court erred in denying the Appellant's motion for judgment of acquittal when the evidence presented was insufficient to sustain a conviction?

4. Whether the trial court erred in denying the Appellant's post-sentence motions, including the motion for judgment of acquittal and motion to vacate judg[]ment and for new trial?

5. Whether prosecutorial misconduct denied the Appellant a fair trial?

6. Whether the trial court committed errors in excluding evidence and issuing rulings that deprived the Appellant of a fair trial?

7. Whether trial counsel was ineffective in violation of the Sixth Amendment [of the United States Constitution] and Article I, Section 9 of the Pennsylvania Constitution?

8. Whether the trial court erred in allowing inconsistent witness testimony without effectively highlighting these contradictions to the jury, and whether [trial] counsel's failure to adequately impeach the [Commonwealth's] witnesses on these inconsistencies violated the Appellant's right to a fair trial under the Sixth Amendment?

_____

[3] The trial court determined that Appellant, who earns an annual salary over $50,000, was not indigent and did not qualify for court-appointed counsel. N.T., 11/19/24, at 5-8; **see also** Order, 7/3/24 (denying Appellant's motion to proceed *in forma pauperis*).

- 6 -

9. Whether the sentence imposed by the trial court was excessive and unreasonable, particularly in light of the mitigating circumstances?

Appellant's Brief at 6-7 (issues reordered; some capitalization modified).

Preliminarily, we observe that "[a]lthough this Court is willing to construe liberally materials filed by a *pro se* litigant, a *pro se* appellant enjoys no special benefit." **Commonwealth v. Westlake**, 295 A.3d 1281, 1286 n.8 (Pa. Super. 2023) (citation omitted). "To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." **Commonwealth v. Vurimindi**, 200 A.3d 1031, 1037 (Pa. Super. 2018) (citation omitted). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." **Commonwealth v. Tchirkow**, 160 A.3d 798, 804 (Pa. Super. 2017) (citation omitted).

*Pro se* litigants "must comply with the procedural rules set forth in the Pennsylvania Rules of Court; if there are considerable defects [in an appellant's brief], we will be unable to perform appellate review." **Vurimindi**, 200 A.3d at 1038 (citation omitted); **see also** Pa.R.A.P. 2101 (if the defects in an appellant's brief "are substantial, the appeal … may be quashed or dismissed."). Our appellate rules provide that

> [t]he argument [section of an appellant's brief] shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a). Appellate arguments which fail to adhere to these rules

may be considered waived. *Tchirkow*, 160 A.3d at 804.

Instantly, Appellant identifies nine questions presented, but the

argument section of his brief is divided into only seven parts. *See* Appellant's

Brief at 6-7, 9-47. It is sometimes unclear which portions of Appellant's

argument correspond to each issue, and no distinctive part of the brief is

devoted to Appellant's second or eighth issues. Nevertheless, we decline to

deem Appellant's issues waived on this basis, and we will address his

arguments to the extent we can discern them.

As Appellant's first four issues challenge the sufficiency of the evidence

underlying his convictions, we consider them together.[4] Appellant argues the

evidence was insufficient to establish that he caused bodily injury to K.I., or

that he endangered K.I.'s welfare. Appellant's Brief at 12, 25. Without citing

the record,[5] Appellant asserts K.I. "was able to communicate with police

_____

[4] Appellant's third and fourth issues challenge the trial court's denial of his post-sentence motions. Appellant's brief addresses these issues in a conclusory manner, without citation to authority. *See* Appellant's Brief at 41, 43. Appellant's argument on these issues appears to be limited to the assertion that the trial court erred in denying his motions because the Commonwealth presented insufficient evidence at trial. *Id.*

[5] We observe that Appellant's brief frequently references the evidence presented at trial without citation to the record. *See* Pa.R.A.P. 2119(c) ("If reference is made to the … evidence, … the argument must set forth, in immediate connection therewith, … a reference to the place in the record where the matter referred to appears."); *see also Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (*en banc*) (where an
*(Footnote Continued Next Page)*

shortly after the alleged incident without displaying any signs of distress, pain, or physical impairment…." *Id.* at 13-14. Appellant contends this "weaken[s] the argument that" K.I. suffered bodily injury or that Appellant's "actions placed [K.I.] at risk." *Id.* at 14, 25.

Appellant argues that K.I. "had a history of spontaneous nosebleeds," and asserts "there is no conclusive evidence that [K.I.'s] nosebleed was caused by" Appellant hitting K.I., "rather than another unrelated factor, such as the hot weather on the day of the incident." *Id.* at 12. Appellant maintains K.I.'s history of nosebleeds provides "a reasonable alternative explanation for [K.I.'s] nosebleed, independent of any alleged physical abuse." *Id.* at 18 (citing N.T., 4/29/24, at 67-70 (K.I. testifying he "sometimes" gets nosebleeds, but "[n]ot that many," recalling "maybe" five nosebleeds "in [his] entire life")).

As part of his sufficiency challenge, Appellant emphasizes perceived inconsistencies between K.I.'s and D.I's trial testimony and their initial statements to police, including whether they described Appellant's strike as a punch or a slap, whether they claimed Appellant hit K.I. on the right or left side of his face, and whether K.I. reported the strike caused him pain. *Id.* at 18-20 (citing N.T., 4/29/24, at 57-59, 61-62, 67-70, 73, 80, 92, 103). Appellant further asserts that K.I., D.I., and Mother "had multiple meetings

_____

appellant fails to cite the record, this Court will not "scour the record to find evidence to support an argument").

with [the prosecutor] prior to the trial, raising concerns about potential coaching and bias." *Id.* at 20-21 (citing N.T., 4/29/24, at 66 (K.I. testifying on cross-examination that he, D.I., and Mother met with the prosecutor "[a] couple" times)). *But see id.* at 83 (K.I. testifying on redirect that the prosecutor never told him what to say, and indicated K.I. should only tell the truth). Citing documents not introduced into evidence at trial, Appellant asserts Mother has "a documented history of false accusations and malicious interferences in Appellant's [child] custody rights," and that Mother's actions "demonstrate a pattern of manipulation designed to alienate" K.I. and D.I. from Appellant. *Id.* at 22 (citing Memorandum of Law, 4/26/24, Exhibits D through P).

Finally, Appellant argues the Commonwealth presented insufficient evidence to disprove that Appellant's "actions, if any," exceeded "permissible parental discipline." *Id.* at 16 (citing 18 Pa.C.S.A. § 509(1) (setting forth circumstances under which parental use of force against a minor child is justifiable)). Appellant asserts "[t]he lack of substantial pain or impairment in this case means that the discipline was within the permissible range of parental control." *Id.* at 17.

> When reviewing a challenge to the sufficiency of the evidence,
>
> we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question

- 10 -

of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Peralta*, 311 A.3d 1, 4 (Pa. Super. 2024) (citation omitted); *see also Commonwealth v. Fitzpatrick*, 255 A.3d 452, 484 (Pa. 2021) ("A sufficiency analysis resolves all evidentiary conflicts in favor of the Commonwealth as verdict winner."). "Moreover, the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part or none of the evidence." *Commonwealth v. Agugliaro*, 342 A.3d 105, 113 (Pa. Super. 2025) (citation omitted). "The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Scott*, 325 A.3d 844, 849 (Pa. Super. 2024) (citation omitted). "The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence." *Id.*

A person is guilty of simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa.C.S.A. § 2701(a)(1). "Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." *Id.* § 2301. "The existence of substantial pain may be inferred from the circumstances surrounding the use of physical force even in the absence of a significant injury." *Commonwealth v. Ogin*, 540 A.2d 549, 552 (Pa. Super. 1988) (*en banc*).

The Crimes Code defines EWOC as follows:

A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or

supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S.A. § 4304(a)(1). As this Court has observed, section 4304

was drawn broadly to cover a wide range of conduct in order to safeguard the welfare and security of children. It is to be given meaning by reference to the common sense of the community and the broad protective purpose for which it was enacted.

Parents have a responsibility to advance the physical, mental, and emotional health of their children, and extreme acts or grave omissions which adversely affect a child may come within the scope of the [EWOC] statute. This will sometimes include actions which the parent allegedly undertook in order to punish the child for bad behavior.

*Ogin*, 540 A.2d at 553 (citations omitted).

In *Ogin*, we concluded the evidence was sufficient to support the appellants' EWOC convictions, where appellants engaged in conduct constituting simple assault against their minor child. *Id.* We determined the jury could reasonably have found appellants "breached a statutory duty to protect their" child, and that the assaultive incidents "were traumatic and created a danger of lasting physical harm[,] notwithstanding the fact that [the child] fortuitously did not sustain serious injury." *Id.* "In short," we concluded, "a jury could find that appellants' acts were so contrary to 'the common sense of the community' as to rise to the level of criminal liability." *Id.*

Regarding the defense of justification, 18 Pa.C.S.A. § 509(1) provides, in relevant part:

The use of force upon or toward the person of another is justifiable if:

(1) The actor is the parent … of a minor … and:

> (i) the force is used for the purpose of safeguarding or promoting the welfare of the minor, including the preventing or punishment of his misconduct; and

> (ii) the force used is not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation.

18 Pa.C.S.A. § 509(1). "Section 509(1)(i) and (ii) involve independent requirements" and an appellant is "not entitled to a justification defense unless [his use of force] complied with both standards." *Ogin*, 540 A.2d at 554.

As this Court has recognized,

> [i]t is well-established that parents have a privilege to subject their children to corporal punishment when the children misbehave. This is so because our society recognizes the primary role of parents in preparing children to assume the obligations and responsibilities of adults, and because there is a need to ensure that the state through its criminal justice system does not unduly interfere with the private realm of family life. Nevertheless, there are limits regarding the type and severity of the corporal punishment which a parent may impose. The law long ago abandoned the view that children are essentially chattels of their parents without independent legal rights. Moreover, it is now clear that child abuse is a serious and widespread problem, … [and] the state has a powerful interest in preventing and deterring the battering of children.

*Id*. (citations omitted).

Instantly, the trial court rejected Appellant's sufficiency claims. *See* Rule 1925(a) Statement, 8/5/24, at 2; *see also* N.T., 4/30/24, at 40-47 (trial court denying Appellant's motion for directed verdict). Our review of the

record confirms the trial court's conclusion that the Commonwealth presented sufficient evidence to support Appellant's simple assault and EWOC convictions, and to disprove his defense of justification under section 509(1).

Appellant's sufficiency argument demands that this Court doubt the credibility of the Commonwealth's witnesses and view the evidence in the light most favorable to Appellant. Though his brief acknowledges that our standard of review requires us to view the evidence in the light most favorable to the Commonwealth, *see* Appellant's Brief at 10, Appellant repeatedly asks us re-weigh the evidence, draw inferences in his favor, and reject the Commonwealth witnesses' testimony as incredible. We reiterate that our "sufficiency analysis resolves all evidentiary conflicts in favor of the Commonwealth," *Fitzpatrick*, 255 A.3d at 484, and that "pass[ing] upon the … credibility of witnesses" is the sole province of the jury, which "is free to believe all, part or none of the evidence." *Agugliaro*, 342 A.3d at 113.

Our review discloses the above-recited evidence, viewed in the light most favorable to the Commonwealth, sufficiently established that Appellant "intentionally, knowingly or recklessly cause[d]" substantial pain to K.I. by punching him in the nose. 18 Pa.C.S.A. § 2701(a)(1). The evidence also sufficiently established that Appellant "violat[ed] a duty of care, protection or support" and "knowingly endanger[ed]" K.I.'s welfare. 18 Pa.C.S.A. § 4304(a)(1). Finally, the evidence was sufficient to prove the force Appellant used was not justifiable as mere corporal punishment under section 509(1)(ii).

The Commonwealth presented evidence that Appellant, an adult male, punched a 9-year-old child in the nose with a closed fist, causing immediate bleeding and pain, and causing the child to cry for an extended period of time. "Under these circumstances, a jury could have fairly concluded beyond a reasonable doubt that [Appellant] used force which was known to create at least a 'substantial risk of … extreme pain or mental distress' within the meaning of section 509(1)(ii)." ***Ogin***, 540 A.2d at 555 (holding the evidence was "sufficient to support a finding that appellants exceeded their privilege to administer corporal punishment."). The jury also could have reasonably inferred that Appellant did not use force "for the purpose of safeguarding or promoting the welfare of the minor, including the preventing or punishment of his misconduct[.]"[6] 18 Pa.C.S.A. § 509(1)(i). Accordingly, Appellant's sufficiency claims merit no relief.

In his fifth issue, Appellant argues he was denied a fair trial because the prosecutor "made inadmissible and highly prejudicial statements" in his closing argument, "based on personal notions of parental responsibility, speculation, and conjecture." Appellant's Brief at 26-27 (citing N.T., 4/30/24, at 127-34). Appellant asserts the prosecutor misstated the law pertaining to the defense of justification under section 509(1), characterizing the prosecutor's statement as suggesting that use of force cannot be justified if a

_____

[6] The Commonwealth's argument for this inference during trial is discussed below in connection with Appellant's fifth issue.

- 15 -

parent is "motivated by anger." *Id.* at 27-28. Though Appellant acknowledges trial counsel lodged no objection to the prosecutor's statement, he maintains the trial court erred in failing to declare a mistrial *sua sponte*. *Id.* at 33.

A trial court's "decision not to grant a new trial based on prosecutorial misconduct will not be reversed on appeal absent an abuse of discretion." *Commonwealth v. Reid*, 259 A.3d 395, 425 (Pa. 2021). "A mistrial is an extreme remedy that is appropriate only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Commonwealth v. Thomas*, 336 A.3d 1038, 1048 (Pa. Super. 2025).

"It is well established that a prosecutor is free to argue that the evidence leads to guilt and is permitted to suggest all favorable and reasonable inferences that arise from the evidence. A prosecutor also may argue his case with logical force and vigor." *Reid*, 259 A.3d at 425 (citations and quotation marks omitted). A prosecutor's comments

> to a jury during closing argument "will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Williams*, 586 Pa. 553, 896 A.2d 523, 542 (2006) (citations and internal quotation marks omitted). "Like the defense, the prosecution is accorded reasonable latitude and may employ oratorical flair in arguing its version of the case to the jury." *Id.* "Prosecutorial misconduct will not be found where the

comments were based on the evidence or derived from proper inferences." ***Id.***

… We further observe that a "prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments." ***Commonwealth v. Burno***, 626 Pa. 30, 94 A.3d 956, 974 (2014). "Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks. Any challenge to a prosecutor's comment must be evaluated in the context in which the comment was made." ***Id.*** (citation and internal quotation marks omitted). In addition, we must presume that the jury followed the trial court's instructions. ***Commonwealth v. Cash***, 635 Pa. 451, 137 A.3d 1262, 1280 (2016).

***Reid***, 259 A.3d at 429.

Instantly, Appellant neglects to quote the particular prosecutorial statement he challenges, but rather cites a range of eight transcript pages, most of which is irrelevant to his argument. ***Id.*** at 26-27 (citing N.T., 4/30/24, at 127-34). Nevertheless, our review discloses the prosecutor argued that, for Appellant to avail himself of the defense of justification, the use of force

has to be for the purpose of punishment. It's not because you get mad and react. Punishment is cold, logical, and well-thought-out. The whole point of it is so that kids understand. But that's not what happened here. What happened here is that [Appellant] got mad, pulled [K.I.] out of the car, cursed at him in Romanian because he was mad, and he hit him in the face. The purpose of that is not punishment. That's just a guy who got mad and he hit his kid. That's just an adult male hitting his 9-year-old boy because he's pissed off. That is not punishment. It's not punishment. It's anger.

N.T., 4/30/24, at 132.

Appellant's appears to argue that his use of force was justified as long as it was not excessive under section 509(1)(ii). ***See*** Appellant's Brief at 27.

- 17 -

However, as set forth above, Appellant is "not entitled to a justification defense unless [his use of force] complied with both" section 509(1)(i) and (ii). **Ogin**, 540 A.2d at 554. Section 509(1)(i) is satisfied only if "the force is used for the purpose of safeguarding or promoting the welfare of the minor, including the preventing or punishment of his misconduct[.]" 18 Pa.C.S.A. § 509(1)(i). Our review discloses the prosecutor's statement was based on the evidence, **see** N.T., 4/29/24, at 58 (K.I. testifying that Appellant "was furious" when he struck K.I.), and fairly suggested an inference that Appellant's use of force did not satisfy section 509(1)(i). The prosecutor did not misstate the law, but properly recognized that Appellant's use of force was not justified if it did not satisfy *either* section 509(1)(i) *or* (ii). Our review further discloses that the trial court accurately instructed the jury regarding the defense of justification under section 509(1). **See** N.T., 4/30/24, at 153-54; **see also Reid**, 259 A.3d at 429 ("[W]e must presume that the jury followed the trial court's instructions."). For these reasons, we discern no abuse of discretion in the trial court's decision not to declare a mistrial *sua sponte*,[7] and Appellant's fifth issue merits no relief.

In his sixth issue, Appellant argues the trial court

> improperly excluded defense evidence that was critical to []
> Appellant's theory, including evidence related to the children's
> alienation and the history of false accusations by [Mother], which
> would have raised reasonable doubt and suspicion as to whether
> the nosebleed was caused by [A]ppellant's alleged action[,] given

_____

[7] The trial court did not address this issue in its Rule 1925(a) statement.

the history of spontaneous bleeding noses and no evidence of severe pain or lasting harm, but also given the aspects of witness credibility, character and motive.

Appellant's Brief at 41 (citing Memorandum of Law, 4/26/24).

Appellant's claim is based solely on the trial court's alleged exclusion of the "evidence" attached to his *pro se* memorandum of law. ***See id.*** at 41-43. However, Appellant fails to identify any place in the record where he sought to introduce this evidence at trial, or where the trial court excluded any defense evidence. ***See id.***; ***see also*** Pa.R.A.P. 2119(c). Additionally, Appellant cites no authority in support of this claim. ***See*** Appellant's Brief at 41-43; ***see also*** Pa.R.A.P. 2119(a). We therefore deem the issue waived for Appellant's failure to develop his argument with citations to the record and pertinent authorities.

In his seventh and eighth[8] issues, Appellant argues that trial counsel rendered ineffective assistance by (1) failing to present the evidence attached

_____

[8] Appellant's eighth issue not only challenges trial counsel's effectiveness, but also asserts "the trial court erred in allowing inconsistent witness testimony without effectively highlighting these contradictions to the jury…." Appellant's Brief at 6. As set forth above, Appellant devotes no distinctive part of his brief to this issue. To the extent the issue challenges trial counsel's ineffectiveness, we consider it together with Appellant's seventh issue. But to the extent the issue alleges trial court error, we deem it waived under Pa.R.A.P. 2119(a) and (c). Appellant fails to develop his argument with any citations to the record or pertinent authorities. Rather, as far as we can discern, Appellant's argument is limited to the bald assertion that trial counsel's alleged failure to highlight inconsistent witness testimony was "compounded by the [trial] court's lack of intervention to ensure that the inconsistencies were brought to the jury's attention." ***Id.*** at 38.

to Appellant's *pro se* memorandum of law; (2) failing to request a "false in one, false in all" jury instruction; (3) "disagree[ing] with [Appellant] regarding defense strategy"; (4) "refus[ing] to support and assist [Appellant] in properly and timely submitting defense evidence"; (5) failing to "adequately oppose the prosecution's case" and "failing to effective[ly] highlight flaws in the charges or object to inadmissible and speculative arguments"; (6) failing to "adequately cross-examine prosecution witnesses to expose critical inconsistencies and showcase unique aspects of the defense through effective impeachment"; and (7) failing to object and/or request a mistrial in response to "inadmissible and highly prejudicial statements made by the prosecutor…." Appellant's Brief at 35-40. Appellant asserts trial counsel "had no reasonable basis for the acts or omissions in question, and [Appellant] suffered prejudice as a result." *Id.* at 40.

As this Court has recently reiterated:

In *Commonwealth v. Holmes*, 621 Pa. 595, 79 A.3d 562 (2013), the Pennsylvania Supreme Court reaffirmed the general rule which was initially set forth in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), that "claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal." *Holmes*, 79 A.3d at 576 (footnote omitted). The *Holmes* Court set forth two limited exceptions to this general rule: (1) in "an extraordinary case where the trial court, in the exercise of its discretion, determines that a claim (or claims) of ineffectiveness is *both meritorious and apparent from the record* so that immediate consideration and relief is warranted[;]"or (2) when the defendant raises "multiple, and indeed comprehensive, ineffectiveness claims[,]" which the court, "in its discretion, and *for good cause shown*," determines post-

- 20 -

verdict review is warranted, and the defendant **waives his right to PCRA review**. **Id.** at 577-78 (emphases added). Subsequently, our Supreme Court adopted a third exception, which requires "trial courts to address claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining subsequent PCRA review." **Commonwealth v. Delgros**, 646 Pa. 27, 183 A.3d 352, 361 (2018).

**Commonwealth v. Watson**, 310 A.3d 307, 310-11 (Pa. Super. 2024) (footnotes omitted; emphasis in original). In **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021), "the Supreme Court recently suggested an additional limited circumstance where an appellant may raise a claim of ineffective assistance of counsel outside of a PCRA petition. However, this exception only applies to petitioners in the PCRA stage of proceedings." **Watson**, 310 A.3d at 311 n.5 (citing **Bradley**, 261 A.3d at 401).

Instantly, Appellant asserted his ineffectiveness claims in his post-sentence Motion to Vacate Judgment and for a New Trial. **See** Motion to Vacate Judgment and for a New Trial, 6/7/24, at 4-9. Appellant did not argue that he satisfied any exception to the general rule that "claims of ineffective assistance of counsel are to be deferred to PCRA review" and that "trial courts should not entertain claims of ineffectiveness upon post-verdict motions[.]" **Holmes**, 79 A.3d at 576; **see also** Motion to Vacate Judgment and for a New Trial, 6/7/24, at 4-9. The trial court summarily denied Appellant's motion. **See** Order, 6/10/24. In its Rule 1925(a) statement in lieu of opinion, the trial court observed that ineffective assistance claims are typically deferred to

PCRA review. Rule 1925(a) Statement, 8/5/24, at 1 (citing **Holmes**, 79 A.3d at 576).

On appeal, Appellant persists in his failure to argue that he satisfies any exception to the rule deferring ineffective assistance claims to the collateral review stage. **See** Appellant's Brief at 34-48. We discern no error in the trial court's refusal to entertain Appellant's ineffectiveness claims raised in a post-sentence motion, and we will not review them on direct appeal. **See Watson**, 310 A.3d at 310-11.

In his ninth and final issue, Appellant purports to challenge the discretionary aspects of his sentence. "There is no automatic right of appeal from the discretionary aspects of a sentence." **Commonwealth v. Glawinski**, 310 A.3d 321, 325 (Pa. Super. 2024) (citation omitted). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) **whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence**, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

**Id.** (emphasis added; some citations omitted).

Our review discloses Appellant failed to preserve his discretionary aspects challenge below, either at sentencing or in a post-sentence motion. Neither of Appellant's *pro se* post-sentence motions raised a sentencing issue.

***See generally*** Motion for Judgment of Acquittal, 6/7/24; Motion to Vacate Judgment and for a New Trial, 6/7/24. Appellant further failed to preserve the instant issue at his sentencing hearing. At that hearing, Appellant argued for a probationary sentence. ***See*** N.T., 5/29/24, at 7 (trial counsel "asking for a sentence of probation…."). The trial court imposed an aggregate sentence of two years' probation. ***See*** Sentencing Order, 5/29/24. Appellant now argues the trial court abused its discretion by not imposing a sentence of guilt without further penalty. ***See*** Appellant's Brief at 44 (citing 42 Pa.C.S.A. § 9753 ("The court may impose a sentence determining guilt without further penalty.")).

As Appellant did not properly preserve the issue below, he cannot invoke this Court's jurisdiction to challenge the discretionary aspects of his sentence.[9] Accordingly, his final issue merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/16/2025

---

[9] We do not reach the question of whether Appellant's conclusory statement of reasons for allowance of appeal—lacking any citation to authority or the record—complies with Rule 2119(f) or presents a substantial question. ***See*** Appellant's Brief at 9.